■ In the Matter of GERALD GREEN, Appellant, v JAMES MYERS et al., Respondents. (Proceeding No. 1.) In the Matter of JAMES MYERS et al., Respondents, v GERALD GREEN, Appellant, et al., Respondent. (Proceeding No. 2.) [788 NYS2d 476]—

Crew III, J. Appeal from an order of the Family Court of Chemung County (Buckley, J.), entered October 9, 2002, which, inter alia, dismissed petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, for modification of a prior order of custody.

Gerald Green, petitioner in proceeding No. 1 and a respondent in proceeding No. 2 (hereinafter the father), and his first spouse, Charlene Green, had two children, Penny and Renee. In 1994, the father was the subject of an indicated report for inadequate guardianship based upon an incident wherein he slapped Penny across the face, leaving bruises on her face and neck. During this same time period, another teenager, Paula Elliott, was residing in the Green household. In or around early 1994, the father, who then was approximately 40 years old, began an extramarital relationship with then 18-year-old Laura Graber. The father thereafter divorced Green and married Graber, now respondent Laura Green (hereinafter the mother), and that union produced the two children who are the subject of these proceedings, Jessica (born in 1996) and Gerald Jr. (born in 1998).

Although it is not clear precisely when domestic violence issues between the mother and the father first arose, the record on appeal contains police reports dating from March 1997 to April 2002. In March 2001, the father was arrested for hitting the mother and, based upon this incident, the local Department of Social Services became involved, and the father thereafter consented to a finding of neglect as to the minor children. Fearing that the Department would remove the children from their home, and in an apparent response to the mother's then escalating mental health issues, in March 2001 the father and the mother placed the children in the custody of the grandparents. Upon consent of the parties, that voluntary arrangement was reduced to a court order in August 2001, which granted legal and physical custody to the grandparents and certain visitation and telephone access to the father and the mother.

Dissatisfied with the level of contact that he was having with the children, the father commenced proceeding No. 1 against the mother and the grandparents seeking to modify the August

2001 order and obtain custody of the children. The grandparents opposed that application and commenced proceeding No. 2 seeking to obtain "permanent" custody of the children until such time as the father and the mother were proven to be mentally and emotionally sound. Family Court thereafter presided over a two-day hearing in these matters, at the conclusion of which the court, among other things, dismissed the father's application and continued custody of the children with the grandparents. This appeal by the father ensued.

We affirm. "It is fundamental that a biological parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (*Matter of Gray v Chambers*, 222 AD2d 753, 753 [1995], *lv denied* 87 NY2d 811 [1996] [citations omitted]). Should the court determine that extraordinary circumstances, such as domestic violence (*see Matter of Benzon v Sosa*, 244 AD2d 659 [1997]; *Matter of Antionette M. v Paul Seth G.*, 202 AD2d 429 [1994], *lv denied* 83 NY2d 758 [1994]), exist, the court then must ascertain what disposition is in the children's best interests (*see Matter of Benzon v Sosa, supra* at 662).

Here, the record plainly reveals that the father has a lengthy history of domestic violence and physical abuse. Green testified, and the father admitted, that he hit her toward the end of their failed marriage, and it is clear that this pattern of spousal abuse continued throughout the course of his marriage to the mother, as evidenced by the police reports contained in the record and the father's own testimony, the latter of which also acknowledged that the minor children witnessed or heard such abuse occurring. As noted previously, the father also was the subject of two indicated reports for inadequate guardianship/neglect stemming from incidents of physical contact. Additionally, although the father denied the incident, Elliott testified that the father punched her in the face when, at age 16, she refused to give him a good night kiss. Finally, Penny testified, and again the father admitted, that he bit her on the chest when she was approximately 14 years old, apparently in a failed attempt to demonstrate the impropriety of biting family members. In light of the foregoing, we have no quarrel with Family Court's determination that the father's demonstrated history of domestic violence and physical abuse—particularly in the context of his relationship with the mother—warranted a finding of extraordinary circumstances.

We reach a similar conclusion with regard to Family Court's

best interest analysis. Based upon the totality of the circumstances, and giving due consideration to, among other things, the parties' respective abilities to provide a stable, loving, safe and financially secure home for the children and to nurture their emotional, physical and educational well-being, Family Court's decision to continue custody of the minor children with the grandparents is amply supported by the record as a whole. We also are unable to discern any basis upon which to alter Family Court's visitation schedule at this juncture.

To the extent that the father takes issue with certain of Family Court's findings, we need note only that Family Court presided over two days of what could, at times, be characterized only as bizarre testimony, covering such diverse topics as witchcraft and cannibalism, presented by witnesses who had a significant emotional investment in the outcome of these proceedings and, often, strained, dysfunctional, acrimonious and/or abusive relationships with one another. Having had the opportunity to observe the testimony and the demeanor of such witnesses first hand, we simply are not inclined to disturb Family Court's factual or credibility determinations.

Mercure, J.P., Spain, Carpinello and Kane, JJ., concur. Ordered that the order is affirmed, without costs.