■ In the Matter of HEATHER HYDE, Respondent, v TINASIA KING, Appellant. [849 NYS2d 650]—

In a child custody proceeding pursuant to Family Court Act article 6, the mother appeals from an order of the Family Court, Westchester County (Duffy, J.), dated July 31, 2006, which, after a hearing, granted the paternal grandmother's petition and awarded the paternal grandmother sole custody of the subject child, with visitation to the mother.

Ordered that the order is reversed, on the law, without costs or disbursements, the paternal grandmother's petition is denied, and the matter is remitted to the Family Court, Westchester County, for a hearing to determine the paternal grandmother's visitation rights, if any.

As between a parent and a nonparent, the parent has the superior right to custody that cannot be denied unless the nonparent establishes that the parent has relinquished that right due to surrender, abandonment, persistent neglect, unfitness, or similar extraordinary circumstances (*see Matter of Bennett v Jeffreys*, 40 NY2d 543, 545-546 [1976]; *Matter of Jamison v Chase*, 43 AD3d 467 [2007]; *Matter of West v Turner*, 38 AD3d 673 [2007]; *Matter of Wilson v Smith*, 24 AD3d 562 [2005]; *Matter of Campo v Chapman*, 24 AD3d 439 [2005]). Here, since the Family Court did not explicitly find that the paternal grandmother established surrender, abandonment, persistent neglect, or unfitness on the part of the mother, under the particular circumstances of this case, the Family Court's determination was impliedly based upon a determination that the paternal grandmother established extraordinary circumstances through an "unfortunate or involuntary disruption of custody over an extended period of time" (*Matter of Bennett v Jeffreys*, 40 NY2d at 546; *see* Domestic Relations Law § 72 [2] [b]).

At the hearing, testimony was adduced that the subject child, who was born on July 17, 2002, resided with the paternal grandmother during the summer of 2003, in April 2004, and

again during the summer of 2004. However, it was undisputed in each instance that the subject child's stay was merely a visit and she thereafter was returned to the custody and care of the mother and father. In October 2004 the mother and father, who were living in Maryland, ended their relationship, and the subject child was left with the mother. Several weeks later, on November 20, 2004, the mother asked the paternal grandmother, who lived in Westchester County, to care for the subject child while she "got back on her feet." While the subject child resided with the paternal grandmother, the mother spoke with the child on the telephone several times, visited her twice, and gave her a Christmas present. In March 2005 the mother informed the paternal grandmother that she had found a new job and apartment. The mother thus made arrangements to pick up the subject child in New York in April 2005. However, when the paternal grandmother met the mother at the designated location, she informed the mother that the subject child was with the father. The father testified at the hearing that, on the night prior to this meeting, he had threatened to report the mother to the IRS if she persisted in taking the subject child back. On June 8, 2005, less than seven months after the mother first voluntarily relinquished custody of the subject child to the paternal grandmother, the paternal grandmother filed the instant petition for sole custody of the subject child.

The Family Court's credibility determinations are generally accorded great deference, and only disturbed if they lack a sound and substantial basis in the record (see Matter of Louise E. S. v W. Stephen S., 64 NY2d 946, 947 [1985]; Matter of Dellolio v Tracy, 35 AD3d 737, 738 [2006]; Matter of Rudy v Mazzetti, 5 AD3d 777, 778 [2004]; Matter of Carl J.B. v Dorothy T., 186 AD2d 736 [1992]). However, in custody matters, this Court's authority is as broad as that of the hearing court (see Matter of Louise E. S. v W. Stephen S., 64 NY2d 946 [1985]; Matter of Carl J.B. v Dorothy T., 186 AD2d 736 [1992]). Here, we defer to the hearing court's determination that the paternal grandmother's testimony was more credible than that of the mother's, as such determination is supported by a sound and substantial basis in the record. However, we disagree with the hearing court and find that the grandmother's credible testimony failed to establish an "unfortunate or involuntary disruption of custody over an extended period of time" (Matter of Bennett v Jeffreys, 40 NY2d at 546) sufficient to deny custody to the mother. The parties understood that the subject child was to reside with the paternal grandmother only until the mother was able to "get back on her feet," the mother contacted and visited with the subject child in the months after November 2004, and she at-

tempted to regain custody of the subject child from the paternal grandmother in April 2005 (*see Matter of Jamison v Chase*, 43 AD3d 467 [2007]; *Matter of Jenny L.S. v Nicole M.*, 39 AD3d 1215, 1216 [2007]; *Matter of Williams v Dunston*, 202 AD2d 681, 682 [1994]; *Matter of Culver v Culver*, 190 AD2d 960, 961 [1993]; *Matter of Ashford N. v Hassan A.*, 88 AD2d 977 [1982]).

Because of the absence of extraordinary circumstances, an inquiry into the child's best interests is not triggered (*see Matter of Bennett v Jeffreys*, 40 NY2d at 548; *Matter of Jamison v Chase*, 43 AD3d 467 [2007]; *Matter of Esposito v Shannon*, 32 AD3d 471, 473 [2006]; *Matter of Wilson v Smith*, 24 AD3d 562 [2005]; *Matter of Kreger v Newell*, 221 AD2d 630 [1995]). In any event, even if we were to make such an inquiry, we would find that it is in the child's best interests for the mother to have custody (*see Matter of Jody H. v Lynn M.*, 43 AD3d 1318, 1319 [2007]), since the mother has resolved the instabilities in her life that existed in November 2004 by remarrying and living in an apartment building superintended by her husband, thus allowing her to live rent free and stay at home to care for her children. Fisher, J.P., Lifson, Covello and McCarthy, JJ., concur.