■ In the Matter of DENISE VANDEE, Respondent, v CASCI BEAN, Appellant-Respondent, and AARON BEAN, Respondent-Appellant. (And Two Other Related Proceedings.) [888 NYS2d 230]—

Garry, J. Cross appeals from an order of the Family Court of Cortland County (Ames, J.), entered September 26, 2008, which partially granted petitioner's application, in three proceedings pursuant to Family Ct Act article 6, for custody of the subject child.

Respondent Casci Bean (hereinafter the mother) married respondent Aaron Bean (hereinafter the father) in January 2005 and gave birth in June 2005 to the child who is the subject of this proceeding. The family lived together in Virginia until the following April, when the father, who has served in the Navy since 2003, was deployed to sea. Immediately upon his return in May 2006, the mother advised the father that she wanted a divorce, left the residence with the child, and moved to New York. The child thereafter lived sporadically with petitioner, the maternal grandmother, in the Town of Cuyler, Cortland County, and consistently with petitioner after August 2007. The father commenced a divorce action in Florida in November 2007. By petition and amended petition, petitioner commenced custody proceedings. In February 2008, Family Court issued a temporary order granting custody to petitioner. The father and mother then separately cross-petitioned for custody. After a fact-finding hearing, the court granted temporary joint custody to petitioner and the father until May 31, 2009, when the father was expected to return to Florida from an overseas deployment. After that date, the father was awarded sole custody, with visitation to petitioner for several weeks each year and visitation to the mother to take place in Florida once monthly for six hours upon seven days notice, and also during the child's visits with petitioner. The mother and father now cross-appeal.

In a custody dispute between a parent and a nonparent, the parent's claim is superior "in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (*Matter of Gray v Chambers*, 222 AD2d 753, 753 [1995], *lv denied* 87 NY2d 811 [1996]; *see Matter of Bennett v Jeffreys*, 40 NY2d 543, 546 [1976]). Only when the nonparent meets the burden of proving that such extraordinary circumstances exist

may the court proceed to consider whether the best interests of the child require an award of custody to the nonparent (*see Matter of McDevitt v Stimpson*, 281 AD2d 860, 861 [2001]). Here, Family Court found that extraordinary circumstances, consisting of persistent neglect and unfitness, were established as to the mother, but not as to the father.

Initially, we disagree with the mother that Family Court erred in finding extraordinary circumstances as to her. The record is replete with evidence supporting the court's conclusions with regard to the mother's unfitness and lack of credibility, including an indicated Child Protective Services report of inadequate guardianship, her history of mental instability, disruptive behavior, and drug and alcohol abuse, her anger management issues, which included anger with the child for what the mother conceded was normal three-year-old behavior, her frequent use of profanity in the child's presence and in directly addressing the child, and her unstable lifestyle, which included leaving the child in petitioner's care to "go out and party and drink and hang out at the bars" without providing contact information or medical authorizations. There was also evidence of the mother's frequent moves and job changes, and numerous short-term romantic relationships to which the child was exposed, including one with a relative and another that involved domestic violence. According the requisite "great deference" (*Matter of Bevins v Witherbee*, 20 AD3d 718, 719 [2005]) to the court's factual findings and assessments of credibility, we find no error in its determination of extraordinary circumstances as to the mother or in its consequent finding that granting sole custody to the father was in the child's best interests. We further disagree with the mother that the visitation awarded to her was an abuse of the court's "broad discretion in determining an appropriate visitation schedule," in view of the evidence of her unfitness and unreliability and her frequent failures to exercise visitation and to comply with visitation orders while the child was in petitioner's care (*Matter of Daniel v Pylinski*, 61 AD3d 1291, 1292 [2009]).

The mother further argues that Family Court improperly relied upon the closing argument submitted by the Law Guardian because it contained recommendations and facts not in the record and because, in the mother's view, it displayed "unjustified dislike" of her. The Law Guardian is an advocate and neither "an investigative arm of the court" (*Weiglhofer v Weiglhofer*, 1 AD3d 786, 788 n [2003]) nor an "advisor[ ] to the court" (*Matter of Devin XX.*, 20 AD3d 639, 641 [2005]). The Law Guardian therefore should not submit recommendations or reports containing facts not in evidence to the court (*see id.*; *Usack v*

*Usack*, 17 AD3d 736, 738 n [2005]; *Weiglhofer v Weiglhofer*, 1 AD3d at 788 n). The Law Guardian may, however, "make [his or her] position[ ] known to the court orally or in writing (by way of, among other methods, briefs or summations)" (*Weiglhofer v Weiglhofer*, 1 AD3d at 788 n), but such submission should not include recommendations or information beyond the scope of the testimony (*see Usack v Usack*, 17 AD3d at 738 n).

Reading the submission as a whole, we find that Family Court properly accepted it as being in the nature of a summation, as it was almost entirely based upon testimony given by witnesses during the hearing. There is no indication that the court based any part of its determination on the few statements and observations that were not in the testimony, nor did the court's ultimate disposition closely correspond to the recommendations made by the Law Guardian. The Law Guardian's account of the interviews with the child and the parties was apparently provided to establish her compliance with her obligations to consult with her client and to have a thorough knowledge of her circumstances (*see Matter of Mark T. v Joyanna U.*, 64 AD3d 1092, 1093-1094 [2009]; 22 NYCRR 7.2 [d] [1]), and provided a foundation for her conclusion that the three-year-old client could not advise the attorney of her wishes as to placement, custody or visitation (*see* 22 NYCRR 7.2 [d] [3]). The summation did not rise to the level of an "inappropriate practice[ ]" (*Weiglhofer v Weiglhofer*, 1 AD3d at 788 n).

Finally, as to the claim that the summation reflected dislike of the mother, the Law Guardian must "zealously advocate the child's position" (22 NYCRR 7.2 [d]). After completing a proper inquiry, "it is entirely appropriate, indeed expected" for the Law Guardian to take a position as to a proper custody disposition and to prefer one party over the other (*Matter of Carballeira v Shumway*, 273 AD2d 753, 756 [2000], *lv denied* 95 NY2d 764 [2000]). There is no evidence that the Law Guardian improperly developed her position or reached conclusions before the evidence was presented (*see id.*). Her "strong expression of her position . . . was not inconsistent with her proper role in these proceedings" (*Matter of Pecore v Pecore*, 34 AD3d 1100, 1102 [2006]).

The father's contentions regarding the temporary joint custody provision are not reached as the temporary award expired by its terms on May 31, 2009, and is thus moot.

Mercure, J.P., Lahtinen, Kane and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.