██ In the Matter of DAVID A. TURNER, Appellant, v ALBERTA MAIDEN, Respondent, et al., Respondent. (And Another Related Proceeding.) [894 NYS2d 602]—

Stein, J. Appeal from an order of the Family Court of Broome County (Pines, J.), entered December 3, 2008, which partially granted petitioner's application, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent Shanika N. Maiden (hereinafter the mother) are the parents of a daughter (born in 2002). At the time of the child's birth, the mother was 19 and still living at home with her mother, respondent Alberta Maiden (hereinafter the grandmother). With the exception of a two-month period, the child has resided at the home of the grandmother since her birth. As a result of a domestic violence incident in December 2004—during which the mother stabbed the father with a knife—the father and the mother were both

incarcerated[1] and, in January 2005, the grandmother was awarded temporary custody of the child. Thereafter, pursuant to a consent order dated June 2005, the grandmother was awarded sole custody of the child, with visitation to the father.

In April 2008, the father commenced the first of these proceedings to obtain sole custody of the child alleging, among other things, that his increased participation in the child's life constituted a change of circumstances. The grandmother then commenced the second of these proceedings, seeking to retain sole custody of the child, with visitation to the father. After holding hearings, including a *Lincoln* hearing, Family Court determined that extraordinary circumstances existed for the grandmother to seek custody of the child and that it was in the child's best interests for the grandmother to retain primary physical custody. The court awarded joint legal custody of the child to the father, the mother and the grandmother, and directed that the child's primary residence remain with the grandmother, and that the father have frequent visitation. The father now appeals and we affirm.

It is well settled that "[i]n a custody dispute between a parent and a nonparent, the parent's claim is superior 'in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances' " (*Matter of VanDee v Bean*, 66 AD3d 1253, 1254 [2009], quoting *Matter of Gray v Chambers*, 222 AD2d 753, 753 [1995], *lv denied* 87 NY2d 811 [1996]; *see Matter of Fynn S.*, 56 AD3d 959, 961 [2008]). It is the nonparent's burden to prove extraordinary circumstances (*see Matter of Mercado v Mercado*, 64 AD3d 951, 952 [2009]). Factors to be considered in determining whether extraordinary circumstances exist include domestic violence (*see Matter of Green v Myers*, 14 AD3d 805, 807 [2005]), as well as "the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the biological parent allowed such custody to continue without trying to assume the primary parental role" (*Matter of Bevins v Witherbee*, 20 AD3d 718, 719 [2005]; *see Matter of Coonradt v Aussicker*, 66 AD3d 1143, 1144 [2009]; *Matter of Campbell v Brewster*, 9 AD3d 620, 621-622 [2004]). "Once extraordinary circumstances have been established, the controlling consideration in determining custody is the best interest of the child" (*Matter of Bennor v Hewson*, 47 AD3d 1136, 1137 [2008] [citations omitted], *lv denied* 10 NY3d 710 [2008]; *see Matter of Jodoin v Billings*, 44 AD3d 1244, 1245 [2007]).

---

1. As a result of that incident, the mother pleaded guilty to assault in the second degree; charges against the father were dropped.

Here, the undisputed evidence established that the child has lived at the grandmother's residence for most of her life and has remained in her custody with the consent of the mother and the father until the filing of the father's petition. The grandmother presented evidence that she lives in a clean, well-kept three-bedroom apartment that is "full of love" and that the child appears to be "very happy." The grandmother does not work and is able to care for the child full time, while the mother works the overnight shift and helps care for the child when she is not working. Although the child had attendance problems in her kindergarten year, the grandmother testified that the child had not been tardy during her first-grade year and the parties agreed that the child was doing well in school.

There was also evidence that the father has lived in five different residences since 2005. The father is unemployed and lives on disability retirement income that he receives based upon his prior military service. He testified that he no longer takes medication for mental health issues.[2] The record also contains evidence that the father is verbally abusive and often yells at the grandmother and at the child. The father acknowledged that he had argued with the grandmother and the mother in front of the child and the mother testified that the father had argued with his live-in girlfriend in the child's presence.

The father presented evidence that he has been involved in the child's life and that they have a good relationship. The father testified that, until these proceedings were commenced, he was regularly picking the child up from school and was spending a substantial amount of time with her. The testimony also established that, unlike the grandmother and the mother, the father regularly attended the child's school functions, including parent-teacher conferences, during the child's kindergarten year. Although the father testified that the child spent an entire summer and almost every weekend with him, the grandmother refuted this and testified that, when the child spent the weekend away, she spent most of her time with the paternal grandmother, not with the father.

According great deference to Family Court's findings and credibility determinations (*see Matter of Bronson v Bronson*, 63 AD3d 1205, 1206 [2009]; *Matter of Bohigian v Johnson*, 48 AD3d 904, 905 [2008])—including its determination that the father's testimony was incredible in many respects—there is a sound and substantial basis in the record to support the court's finding of extraordinary circumstances and its consequent finding

---

**2.** Such issues apparently include a diagnosis of posttraumatic stress disorder.

that it was in the child's best interests to remain in the grandmother's primary care. The father's prior consent to the grandmother's sole custody of the child, the fact that the child had resided with the grandmother in a stable environment for most of her life and is apparently thriving there and the father's failure to maintain a stable residence and ongoing problems with domestic violence sufficiently demonstrate extraordinary circumstances (see Matter of Coonradt v Aussicker, 66 AD3d at 1144; Matter of Fynn S., 56 AD3d at 961-962; Matter of Bohigian v Johnson, 48 AD3d at 905-906; Matter of Green v Myers, 14 AD3d at 807). Likewise, although the record reflects that none of the parties is without shortcomings, the father has been an involved parent and he has a close relationship with the child, the totality of the evidence also supports the court's best interests determination (see Matter of Ronald I. v James J., 53 AD3d 706, 708 [2008]). There was no evidence that the grandmother was not willing to work with the father to allow him liberal visitation and to foster his relationship with the child. In addition, we are mindful that the Law Guardian supported the grandmother's petition. Thus, we find no basis in the record to disturb Family Court's findings (see Matter of Bohigian v Johnson, 48 AD3d at 905).

Mercure, J.P., Spain, Malone Jr. and Garry, JJ., concur. Ordered that the order is affirmed, without costs.