In the Matter of MELINDA ANNE MOSELEY et al., Respondents, v REBECCA WHITE, Appellant, and ROBERT WHITE, Respondent. [903 NYS2d 575]—

Spain, J. Appeal from an order of the Family Court of Tompkins County (Sherman, J.), entered May 26, 2009, which, among other things, granted petitioners' application, in a proceeding pursuant to Family Ct Act article 6, for custody of the subject children.

Petitioners are the maternal grandparents of the children who are at the center of this appeal, a boy (born in 2001) and a girl (born in 2003). They obtained physical custody of the children in April 2008 when their daughter, respondent Rebecca White (hereinafter the mother), asked them to come to Tennessee and retrieve the children after her arrest in connection with a domestic violence incident in which respondent Robert White, the children's father (hereinafter the father), was the victim. The grandparents traveled to Tennessee, removed the children to their home in the Town of Newfield, Tompkins County, enrolled them in school and commenced this proceeding seeking

---

permanent legal custody. The father, who now resides in Steuben County near the grandparents' home, ultimately consented to physical custody with the grandparents on the condition that no finding of extraordinary circumstances be entered against him in this matter, and that he be granted visitation with the children. The mother, who continues to reside in Tennessee, opposed the petition and cross-petitioned for sole custody.

After fact-finding and *Lincoln* hearings, Family Court found that extraordinary circumstances justified an award of custody to a nonparent and that it was in the children's best interests to grant custody to the grandparents. The court also granted parental access to the father on alternate weekends and supervised access for the mother on alternate weekends. The mother now appeals.

" 'It is fundamental that a biological parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances' " (*Matter of Green v Myers*, 14 AD3d 805, 807 [2005], quoting *Matter of Gray v Chambers*, 222 AD2d 753, 753 [1995], *lv denied* 87 NY2d 811 [1996]; *see Matter of Bennett v Jeffreys*, 40 NY2d 543, 544 [1976]). After a careful review of the record, we affirm Family Court's conclusion that extraordinary circumstances exist in this case to warrant consideration of whether it would be in the children's best interests to grant custody to the grandparents.

The evidence at the fact-finding hearing reveals that, during the lives of these young children, the parents have separated and reconciled many times and repeatedly changed residences due to job losses and evictions in several states. Proof was adduced that, while living in Tennessee in the year prior to coming to live with the grandparents, the children failed to receive basic medical care such as immunizations and dental care. The mother's disregard for the well-being of her children was also established by her criminal history during this period. In October 2007, the mother and two other women were arrested for larceny after employing her four-year-old daughter and another young child to conceal merchandise in their attempt to steal the items from a store. The mother pleaded guilty, was given probation and ordered to pay restitution. She was also charged with aggravated assault after she attacked the father with a knife. During the same incident, she wrapped a telephone cord around her neck and attempted to commit suicide, whereupon the father sent their six-year-old son to a neighbor's house

to call 911. The record further reveals that the mother has gotten into physical altercations with other adults and has had suicidal thoughts prior to this attempt, but never sought nor received any ongoing psychiatric treatment. Following the attack on the father, the mother again received probation and was ordered to complete anger management classes. Significantly, the record demonstrates that the children remember the mother wielding a knife against the father, and being scared and upset.

Following the second arrest, the father and mother again separated and, facing eviction, the mother called upon the grandparents to come and retrieve the children. At that point, she signed a notarized statement granting the grandparents physical custody until she was able to provide and care for them, permission to obtain medical care and permission to enroll them in school in New York. It is undisputed that, at that time, the grandparents expected the mother to eventually join the children in New York. Instead, the mother chose to remain in Tennessee where she is living with a man serving criminal probation who has a history of substance abuse.

Since the children moved to New York, the mother calls them less than once a week and has not visited except when she came to New York for the fact-finding hearing. When the mother expressed an interest in visiting the children during Christmas 2008, the grandparents offered to pay half of her plane fare. However, the mother refused and never came to visit, explaining at the hearing that since the plane ticket was all she wanted for Christmas, it was unfair of her parents not to offer to pay for the entire ticket. Record evidence also reflects that the mother did not send gifts or cards for the children on their birthdays or at Christmas. Given the instances of neglect, domestic violence, emotional instability and financial insecurity leading up to her decision to transfer physical custody of the children to the grandparents, and the lack of evidence, despite her completion of anger management classes, that the mother has matured to a point of placing her children's interests above her own, we conclude that Family Court's finding of extraordinary circumstances has a sound and substantial basis in the record (see Matter of Gardner v Gardner, 69 AD3d 1243, 1245-1246 [2010]; Matter of VanDee v Bean, 66 AD3d 1253, 1255 [2009]; Matter of Jodoin v Billings, 44 AD3d 1244, 1245 [2007]; Matter of Green v Myers, 14 AD3d at 807).

Having concluded that extraordinary circumstances exist, the disposition of custody is controlled by what is in the best interests of the children (see Matter of Bennett v Jeffreys, 40 NY2d at 544; Matter of Mercado v Mercado, 64 AD3d 951, 952

[2009]; *Matter of Green v Myers*, 14 AD3d at 807). Here, the grandparents have been providing a stable, loving environment for the children. Both grandparents work in the local educational system, the grandfather as a teacher and the grandmother as an assistant to a middle school principal. They have provided a foster home to many children over the years and adopted five children, including the mother. Currently, in addition to their two grandchildren, five of their children reside with them. Although the children clearly miss their mother and the son experienced significant behavioral problems throughout first grade, the grandparents are providing a nurturing, supportive environment and getting him the counseling he requires. Indeed, there is a striking contrast between the care provided by the grandparents, which furthers the children's best interests, and the unstable, even violent, existence they have known most of their young lives. Accordingly, the record fully warrants the grant of custody to the grandparents (*see Matter of Turner v Maiden*, 70 AD3d 1214, 1216-1217 [2010]; *Matter of Jodoin v Billings*, 44 AD3d at 1245; *Matter of Green v Myers*, 14 AD3d at 807; *see also Matter of Perry v Perry*, 194 AD2d 837, 837 [1993]).

Mercure, J.P., Lahtinen, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order is affirmed, without costs.