■ In the Matter of ANGEL RAMOS, Appellant, v KELLY RAMOS et al., Respondents. (Proceeding No. 1.) In the Matter of KELLY L. RAMOS, Appellant, v ANGEL RAMOS et al., Respondents. (Proceeding No. 2.) [905 NYS2d 717]—

McCarthy, J. Appeals from an order of the Family Court of Broome County (Pines, J.), entered April 2, 2009, which dismissed petitioners' applications, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

Angel Ramos (hereinafter the father) and Kelly L. Ramos (hereinafter the mother) are the married parents of two chil-

dren (born in 2004 and 2006). When they separated in 2006, the father agreed to an order awarding sole custody to the mother, subject to his visitation on alternate weekends. In July 2007, the mother left the children with her parents, respondents John Wayman and Glenda Wayman (hereinafter the grandparents), in order to temporarily relocate outside of Broome County as a result of financial difficulties and an ongoing contentious relationship with the father. While the father continued to exercise his visitation in the mother's absence, the grandparents soon petitioned Family Court requesting that they share joint custody with the parents and be awarded physical custody.

In November 2007, upon the mother's consent—through counsel in her absence—and the father's failure to appear, Family Court ordered that the mother and the grandparents share joint custody, with physical custody to the grandparents and visitation to the mother and the father as agreed upon by the parties. Only five days following the court appearance that led to that consent order, the father commenced the first of the instant modification proceedings against the mother and the grandmother seeking sole custody of the children. Shortly thereafter, the mother commenced a separate modification proceeding against the father and the grandparents requesting, among other things, sole custody. At the conclusion of a hearing, which was held on several days and spanned more than a year, the court dismissed the parents' applications, finding an insufficient change in circumstances to warrant modification. The mother and the father each appeal.

Family Court based its decision primarily upon the erroneous assumption that the November 2007 consent order that placed custody of the children with the grandparents somehow established extraordinary circumstances. Significantly, the consent order was made without any finding or admission to the presence of extraordinary circumstances, and it is indeed settled law that before determining whether either parent had demonstrated or was required to demonstrate the requisite change in circumstances, the court in this proceeding was obligated to ascertain—as a threshold matter—whether placement with a nonparent over a parent was warranted (see Matter of Mercado v Mercado, 64 AD3d 951, 952-953 [2009]; Matter of McArdle v McArdle, 1 AD3d 822, 823 [2003]).

"[A] biological parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (Matter of Moseley v White, 74 AD3d 1424, 1425

[2010] [internal quotation marks and citations omitted]; *see* Domestic Relations Law § 72 [2] [a], [b]; *Matter of Bennett v Jeffreys*, 40 NY2d 543, 544 [1976]; *Matter of Brown v Zuzierla*, 73 AD3d 765, 766 [2010]). "A finding of extraordinary circumstances is rare, and the circumstances must be such that they 'drastically affect the welfare of the child' " (*Matter of Jenny L.S. v Nicole M.*, 39 AD3d 1215, 1215 [2007], *lv denied* 9 NY3d 801 [2007], quoting *Matter of Bennett v Jeffreys*, 40 NY2d at 549). Indeed, the nonparent bears the heavy burden of proving extraordinary circumstances (*see Matter of Gardner v Gardner*, 69 AD3d 1243, 1245 [2010]), and the "existence of a prior consent order of custody in favor of the nonparent is not sufficient to demonstrate extraordinary circumstances" (*Matter of Mercado v Mercado*, 64 AD3d at 952; *see Matter of Loukopoulos v Loukopoulos*, 68 AD3d 1470, 1471 [2009]).

Having concluded that Family Court did not make the requisite threshold determination regarding extraordinary circumstances, we are empowered to consider and make, if warranted, such a predicate finding based upon an adequately developed record (*see Matter of Danzy v Jones-Moore*, 54 AD3d 858, 859 [2008]; *compare Matter of Mercado v Mercado*, 64 AD3d at 953; *Matter of Moore v St. Onge*, 307 AD2d 421, 422 [2003]). However, based upon our review of the fully developed record before us, we conclude that the grandparents did not establish extraordinary circumstances so as to deprive the parents of the custody of their children.

In determining whether extraordinary circumstances exist, "factors to be considered include [but are not limited to] the length of time the child[ren have] lived with the nonparent, the quality of that relationship and the length of time the biological parent allowed such custody to continue without trying to assume the primary parental role" (*Matter of Bevins v Witherbee*, 20 AD3d 718, 719 [2005]; *see Matter of Cumber v O'Leary*, 56 AD3d 1067, 1069-1070 [2008]). Here, at the time the father's petition was filed, the children had only been living with the grandparents for a few months, from July 2007 until early November 2007. The record reflects that, except when the father was precluded from doing so by a temporary order of protection, he regularly and consistently exercised visitation with the children—both following his separation from the mother and after the children began residing with the grandparents. In this regard, the father testified that he assumed that the children were living with their grandparents only on a temporary basis until the mother could get back on her feet. Although the father was aware that the grandparents subsequently filed for custody,

having appeared with them in Family Court on that matter on September 21, 2007, he subsequently changed residence and never received notice of the conference that occurred on October 31, 2007, the date the consent order was agreed to in his absence.[1] Five days after the consent order was made—when he first learned that the grandparents and the mother had been granted joint custody—the father filed for sole custody. While the father should have informed the court of his change of address, such a misstep cannot be considered an abandonment of his children or any other kind of extraordinary circumstance, especially considering his prompt action after that court appearance.

As to the mother, she testified that when she asked the grandparents to take the children in July 2007, she was overwhelmed by financial difficulties and had just ended a difficult relationship with the father. Her asserted understanding was that she was leaving the children with them temporarily and that she would take the children back as soon as she stabilized her life. Nothing in the record appears to contradict this assertion. When the grandparents petitioned for custody, it was agreed that she would have joint custody with them and that both she and the father would have such visitation with the children as the parties could agree. The resulting consent order expressly reserved her rights as well. In view of the relatively short period of time that elapsed between the date she left the children with the grandparents and the date she filed her petition for custody, any conclusion that the mother abandoned her children is not supported by the record.[2] To the contrary, the record reflects that the mother, at a time of great stress in her life, acted responsibly in seeking out what was—at the time— the best option for her children, i.e., placing them with her willing and capable parents (*see Matter of Hyde v King*, 47 AD3d 813, 814-815 [2008]).

The record does not disclose any other extraordinary circum-

---

1. In light of both parents' absence, the referee who presided at the conference stated that Family Court would likely sign an order of joint custody but reserve the right to each parent "to apply to the [c]ourt in the event they wish to change something." Also, "they wouldn't need a huge change [of] circumstances [because] they haven't been here to consent to it." Thereafter, Family Court's order expressly "reserved" the rights of both parents.

2. Notably, an "extended disruption of custody" giving grandparents statutory standing to seek court-ordered custody rights must generally last "at least twenty-four continuous months during which the parent voluntarily relinquished care and control of the child and the child resided in the household of the . . . grandparent or grandparents" (Domestic Relations Law § 72 [2] [b]; *see Matter of Magana v Santos*, 70 AD3d 1208, 1209 [2010]). This clearly was not the case here.

stances so as to support an award of custody to the grandparents. By all accounts, the marriage between the mother and the father was tumultuous, marked by allegations of domestic violence and intermittent periods of separation, all of which negatively impacted their parenting. They have now been separated for some time and neither appears interested in reconciling. While each of them was the subject of an indicated report for inadequate supervision (one after the father left their then six-month-old son at home alone while he went to pick up the mother at a local hospital where she had been a patient, and the other after the mother returned with the children to the marital home while there was a temporary order of protection against the father), neither parent has been adjudicated to have committed any act of domestic violence or has been the subject of any abuse or neglect proceeding. None of the parents' shortcomings rises to the level of unfitness, persistent neglect or other rare circumstance sufficient to permit an award of custody to the grandparents, and while the grandparents may be capable of doing a "better job" of raising the children, that is not the test (*see Matter of Bennett v Jeffreys*, 40 NY2d at 548). On this record, there is an absence of evidence that either parent—by action or inaction—behaved so badly as to have relinquished his or her superior right to custody (*see Matter of Brown v Zuzierla*, 73 AD3d at 766).

However, where, as here, each biological parent is seeking custody, "a finding that there are no extraordinary circumstances warranting a grant of custody to a nonparent does not end Family Court's inquiry. Rather, under such circumstances, 'both parents [are] on an equal footing with the identical burden of establishing that the child[ren]'s best interest[s] would be served by awarding . . . custody to him or her" (*Matter of Murray v Parisella*, 41 AD3d 902, 903 [2007], quoting *Matter of Fletcher v Young*, 281 AD2d 765, 767 [2001]). Accordingly, we reverse Family Court's order, reinstate the parents' respective modification petitions and remit for a best interests hearing as between the parents (*see Matter of Murray v Parisella*, 41 AD3d at 904; *Matter of McDevitt v Stimpson*, 281 AD2d 860, 862 [2001]; *cf. Matter of Kargoe v Mitchell*, 12 AD3d 978, 980 [2004], *lv dismissed* 4 NY3d 794 [2005]). In the meantime, Family Court may use its discretion to craft a suitable temporary transitional order until the parents can agree to an appropriate custody arrangement or the court makes such a determination after a fact-finding hearing.

Spain, J.P., Lahtinen, Stein and Garry, JJ., concur. Ordered that the order is reversed, on the law, without costs, and mat-

ters remitted to the Family Court of Broome County for further proceedings not inconsistent with this Court's decision.

