*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: October 22, 2015                    517267
_____

In the Matter of LINA Y.,
                    Respondent,

        v

AUDRA Z.,                                    MEMORANDUM AND ORDER
                    Appellant,
                    et al.,
                    Respondent.
_____

Calendar Date: September 11, 2015

Before: McCarthy, J.P., Egan Jr., Lynch and Clark, JJ.

_____

        Mary Jane Murphy, Binghamton, for appellant.

        Lina Y., Unadilla, respondent pro se.

        Carman M. Garufi, Binghamton, attorney for the child.

_____

Lynch, J.

        Appeal from an order of the Family Court of Broome County
(Charnetsky, J.), entered May 16, 2013, which granted
petitioner's application, in a proceeding pursuant to Family Ct
Act article 6, for custody of the subject child.

        Respondent Audra Z. (hereinafter the mother) is the mother
of a daughter (born in 1998). Prior to the commencement of this
proceeding, the mother had sole physical and legal custody of the
child. Petitioner is the mother's sister. In 2003, the child
stayed with petitioner for approximately three months when the
mother was hospitalized for mental health treatment. In May
2012, the mother was admitted to the hospital, again to obtain

mental health treatment, and the child went to stay with petitioner. During the mother's ensuing 10-day hospitalization, petitioner assumed responsibility to care for the child and sought custody of the child, and Family Court granted temporary sole custody of the child to petitioner. The court also directed an investigation by the Broome County Department of Social Services. As a result of the Department of Social Services investigation, a report was initially indicated against the mother for inadequate guardianship, food, clothing and shelter of the child, but was later determined to be unfounded. In March 2013, after a trial and Lincoln hearing, the court awarded sole custody of the child to petitioner, with visitation to the mother as the parties could agree. The mother now appeals.

"It is well settled that a . . . parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (Matter of Burton v Barrett, 104 AD3d 1084, 1085 [2013] [internal quotation marks and citations omitted]; see Matter of Bennett v Jeffreys, 40 NY2d 543, 549 [1976]; Matter of Liz WW. v Shakeria XX., 128 AD3d 1118, 1120 [2015], lv dismissed 25 NY3d 1195 [2015]). Accordingly, petitioner, as a nonparent, bore "the heavy burden of first establishing the existence of extraordinary circumstances to overcome the . . . parent['s] superior right of custody" (Matter of Aida B. v Alfredo C., 114 AD3d 1046, 1048 [2014]; see Matter of Liz WW. v Shakeria XX., 128 AD3d at 1120). To this end, Family Court heard testimony from the mother, petitioner, the mother's therapist, a caseworker who provided services to the mother while she was homeless and an animal control officer employed by the town where petitioner resided with her husband and the child. Afterwards, the court concluded that extraordinary circumstances existed because the mother had been hospitalized "multiple times for extended periods," had been "recently evicted" and that, according to petitioner's testimony, there were "significant detrimental conditions to the mother's residence" that "created a very difficult living situation for [the] child."

While we give great deference to Family Court on appeal, notably share the factfinder's broad authority in custody matters (see Matter of Shokralla v Banks, 130 AD3d 1263, 1264 [2015]; Matter of Aylward v Bailey, 91 AD3d 1135, 1136 [2012]). "A determination of whether extraordinary circumstances exist takes into consideration such factors as the length of time the child has resided with the nonparent, the quality of the child's relationships with the parent and the nonparent, the prior disruption of the parent's custody, separation from siblings and any neglect or abdication of responsibilities by the parent" (Matter of Roth v Messina, 116 AD3d 1257, 1258 [2014] [citations omitted]). Generally, such a finding is rare and exists where the extraordinary circumstances "drastically affect the welfare of the child" (Matter of Ramos v Ramos, 75 AD3d 1008, 1010 [2010] [internal quotation marks and citations omitted]; accord Matter of Jenny L.S. v Nicole M., 39 AD3d 1215, 1215 [2007], lv denied 9 NY3d 801 [2007]).

In our view, no such finding was warranted here. When this proceeding was commenced, the child had been residing with petitioner in her home – located more than an hour drive from the mother – for only a few days. During her 10-day hospitalization, the mother continued to attempt to maintain contact with the child. When she was released from the hospital, the mother's attempts to see the child were hindered not only by her health issues, the loss of her home, distance and lack of transportation, but also by the extreme and unfortunate animosity between the mother and petitioner. The mother did not neglect her responsibilities; rather, during the pendency of the hearing, she was obtaining regular mental health treatment, sought help and obtained a suitable apartment and car, and was employed as an adjunct professor. While a health crisis of any sort can be frightening and upsetting to a child, the record does not reflect that the child's relationship with her mother was any worse than the one she shared with petitioner. Notably, Family Court recognized that the child was "a wonderful young lady[,] well-adjusted, very knowledgeable, intelligent, doing well in school [and] involved in activities," and that the mother "played a significant role and ha[d] done a very good job of raising" the child.

While we have no reason to doubt petitioner's intentions, the record reveals that she and the mother share a poor and unstable relationship.  This dynamic led to a disjointed record that failed to support the self-represented petitioner's claim that the mother was refusing treatment for certain mental illnesses.  Rather, the record reveals that the mother sought and obtained inpatient treatment when she was ill.  When the inpatient treatment concluded, the mother proceeded, alone, to continue treatment and obtain assistance to provide a residence and some stability for the child.  During this time, petitioner, despite her superior resources, offered little assistance to the mother's attempts to speak or visit with the child.  Nor, unfortunately, did Family Court establish a specific visitation schedule, as repeatedly requested by the mother, opting instead to direct the parties to work visitation out themselves, notwithstanding their demonstrated inability to do so.  Based on the record, we cannot agree with Family Court that petitioner met her heavy burden of demonstrating the existence of extraordinary circumstances.

McCarthy, J.P., Egan Jr. and Clark, JJ., concur.


ORDERED that the order is reversed, on the law, without costs, and petition dismissed.


ENTER:

Robert D. Mayberger
Clerk of the Court