Lynch, J. Appeal from an order of the Family Court of Broome County (Connerton, J.), entered June 17, 2016, which dismissed petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody. Petitioner (hereinafter the mother) and respondent Brian XX. (hereinafter the father) are the divorced parents of two children (born in 2001 and 2003). Respondent Cheryl XX. (hereinafter the grandmother) is the paternal grandmother of the two children. Pursuant to a 2014 order, issued on consent, Family Court granted the grandmother primary physical custody of the children and joint legal custody to the mother, father and grandmother. This order also provided the mother with parenting time on alternate weekends. In February 2016, the mother filed a petition to modify the 2014 order, seeking physical custody of the children, who had been residing with her since September 2015. Shortly before the May 2016 fact-finding hearing on the petition, the older child was placed in the custody of the Broome County Department of Social Services (hereinafter DSS) for a period extending through at least May 2017. Consequently, the focus at the fact-finding hearing was the custody of the younger child. Following the hearing and a Lincoln hearing with the younger child, Family Court dismissed the mother’s petition and continued the 2014 order. The mother now appeals. A parent has a superior right to custody over the rights of a nonparent, and “[t]he [s]tate may not deprive a parent of the custody of a child absent surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances” (Matter of Bennett v Jeffreys, 40 NY2d 543, 544 [1976]; see Matter of Cheryl YY. v Cynthia YY., 152 AD3d 829, 830 [2017]). The nonparent bears the burden of demonstrating that such extraordinary circumstances exist, and this burden may not be met through reliance on a prior order—issued on consent— awarding custody to a nonparent (see Matter of Mercado v Mercado, 64 AD3d 951, 952 [2009]). A court may consider a child’s best interests only where the nonparent meets this burden (see Matter of Cheryl YY. v Cynthia YY., 152 AD3d at 830). Because the 2014 custody order was consensual, Family Court should have addressed whether extraordinary circumstances existed to warrant continuing primary physical custody with the grandmother (see Matter of Elizabeth SS. v Gracealee SS., 135 AD3d 995, 996 [2016]; Matter of Ramos v Ramos, 75 AD3d 1008, 1009 [2010]). Unfortunately, because the grandmother abdicated her role as primary physical custodian, this threshold issue was neither presented to nor resolved by the court.* Upon the exercise of our authority to independently review the record (see Matter of Tamika B. v Pamela C., 151 AD3d 1220, 1221 [2017]), we find no such extraordinary circumstances are present here. To determine whether extraordinary circumstances exist, we consider “such factors as the length of time the child has resided with the nonparent, the quality of the child’s relationships with the parent and the nonparent, the prior disruption of the parent’s custody, separation from siblings and any neglect or abdication of responsibilities by the parent” (Matter of Lina Y. v Audra Z., 132 AD3d 1086, 1087 [2015] [internal quotation marks and citation omitted]; accord Matter of Ramos v Ramos, 75 AD3d at 1010). Without dispute, the record demonstrates that the mother has a significant and disturbing history with DSS. For example, in 1996, the mother was convicted of criminally negligent homicide of her three-month-old child and, in 1999 and 2000, she was determined to have permanently neglected her four other children. No party objected to Family Court taking judicial notice of this history. The record includes a number of prior orders pertaining to a 2001 neglect proceeding with respect to the older child, and a 2004 order, also issued on consent, that awarded the grandmother, mother and father joint custody of the older child with primary physical custody to the grandmother. Apart from the 2014 order, there is nothing in the record that demonstrates that there was a prior finding that the mother derivatively neglected the younger child, nor is there an order placing custody of the younger child with the grandmother based on a finding of extraordinary circumstances. Notably, the 2004 and 2014 orders allowed the mother to have unsupervised parenting time with the children. It is not disputed that the younger child resided with the grandmother from the time that he was born until September 2015, when, with the grandmother’s consent, he began to live with the mother and her boyfriend. While the father may have had some parenting time, he testified that he did not want custody of or visitation with the children. The grandmother testified unequivocally that she was no longer able to care for the children and could not continue to be their primary custodian. The mother testified that she was taking medication under the supervision of a medical provider, that both she and the younger child were receiving regular mental health counseling, that the younger child was doing well in school and at home, and that, since the older child had been placed in DSS custody, there have been no arguments in their household. The mother further confirmed that she has a “great” relationship with the grandmother, who is welcome to unlimited visitation. Although a prolonged separation between a parent and child may support a finding of extraordinary circumstances (see Matter of Bennett v Jeffreys, 40 NY2d at 545; Matter of Magana v Santos, 70 AD3d 1208, 1209-1210 [2010]), here, the limited record does not warrant a finding of extraordinary circumstances on this basis. The grandmother was the primary physical custodian for most of the younger child’s life, but there is no claim or evidence that the mother abdicated her responsibilities, and the record indicates that she had unsupervised parenting time with both children since 2004 and has been a joint custodian since at least December 2014 (see Matter of Elizabeth SS. v Gracealee SS., 135 AD3d at 996-997; Matter of Ramos v Ramos, 75 AD3d at 1011). The history of neglect is relevant (see Matter of Diane FF. v Faith GG., 291 AD2d 671, 672 [2002]), but the mother’s history—though tragic—was remote and there was no evidence or claim that she has failed to comply with the recommendations and obtain the treatment offered by DSS in recent times or that she has failed to remain involved in the children’s lives (see Matter of Arlene Y. v Warren County Dept. of Social Servs., 76 AD3d 720, 721 [2010], lv denied 15 NY3d 713 [2010]). Her testimony shows otherwise. While we acknowledge that Family Court had due cause for concern, absent extraordinary circumstances, we necessarily must find that the mother is entitled to retain custody of the younger child (see Matter of Jennifer BB. v Megan CC., 150 AD3d 1340, 1343 [2017]; Matter of Brown v Comer, 136 AD3d 1173, 1176 [2016]). Although certainly not dispositive, it is important to recognize that the attorneys for the children have both supported the mother’s appeal. Even were we to accept that the prior history established a basis for finding extraordinary circumstances, given that the grandmother allowed the children to reside with the mother since September 2015 and refused to resume her role as primary physical custodian, there has clearly been a change of circumstances (see Matter of Crisell v Fletcher, 141 AD3d 879, 880 [2016]). The record otherwise shows that the mother has provided a stable home and appropriate medical care for the younger child, who has maintained excellent grades in school and participates in positive extracurricular activities, such as the boy scouts. From our reading of the Lincoln hearing, we do not get the impression that the younger child’s testimony was coached. As such, we would also conclude that the placement of physical custody with the mother is in the younger child’s best interests. Rose and Pritzker, JJ., concur. The grandmother did not consent to the mother’s petition for custody but, instead, testified that the children should be placed in foster care essentially because they were difficult to handle when together. The father took a similar position. At the same time, however, the grandmother made no attempt to identify extraordinary circumstances.