Matter of Mary D. v Ashley E. (2018 NY Slip Op 01231)





Matter of Mary D. v Ashley E.


2018 NY Slip Op 01231


Decided on February 22, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 22, 2018

524414

[*1]In the Matter of MARY D., Respondent,
v
ASHLEY E., Respondent, and TAYLOR F., Appellant. 
(Proceeding No. 1.)
In the Matter of TAYLOR F., Appellant,
v
v
ASHLEY E., Respondent. (Proceeding No. 2.)

Calendar Date: January 16, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Rumsey, JJ.


Rural Law Center of New York, Castleton (Kristin A. Bluvas of counsel), for appellant.
Harpremjeet Kaur, Richfield Springs, for Mary D., respondent.
Larisa Obolensky, Delhi, for Ashley E., respondent.
Monica V. Carrascoso, Cooperstown, attorney for the 
children.


Rumsey, J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Otsego County (Burns, J.), entered December 6, 2016, which, among other things, granted petitioner's application, in proceeding No. [*2]1 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Taylor F. (hereinafter the father) is the father of twins (born in 2013). Shortly after their birth, the children and respondent Ashley E. (hereinafter the mother) began residing with the children's maternal great-grandmother. In January 2015, a consent order was entered that provided for joint legal custody to the parents, primary physical custody with the mother and visitation for the father. In October 2015, the children and the mother began residing with the children's maternal grandmother, petitioner Mary D. (hereinafter the grandmother), and the father moved to Virginia. In January 2016, the mother moved from the grandmother's home — without the children — to seek treatment for a heroin addiction, which prompted the grandmother to petition for custody (proceeding No. 1). Thereafter, the father commenced a custody modification proceeding, seeking sole legal and physical custody of the children and permission to relocate them to Virginia (proceeding No. 2). In June 2016, the grandmother filed an amended petition. After a fact-finding hearing, Family Court awarded sole legal custody to the grandmother, awarded visitation to the mother and the father and dismissed the father's custody petition. The father now appeals.
"A parent's claim to custody of his or her children is superior to that of all others absent a showing of surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or other like extraordinary circumstances" (Matter of Durgala v Batrony, 154 AD3d 1115, 1117 [2017] [internal quotation marks and citations omitted]). "Factors to be considered in determining whether extraordinary circumstances exist [also] include domestic violence, as well as the length of time the child[ren have] lived with the nonparent, the quality of that relationship and the length of time the . . . parent allowed such custody to continue without trying to assume the primary parental role" (Matter of Turner v Maiden, 70 AD3d 1214, 1215 [2010] [internal quotation marks and citations omitted]; see Matter of Green v Myers, 14 AD3d 805, 807 [2005]). "The burden of proving extraordinary circumstances lies with the nonparent and, once this showing is made, Family Court may then proceed to the issue of whether an award of custody to the nonparent, rather than the parent, is in the children's best interests. Notably, no continuing preference for the parent over the nonparent is part of the best interests analysis" (Matter of Marcia ZZ. v April A., 151 AD3d 1303, 1304 [2017] [internal quotation marks, brackets and citations omitted]).
Family Court's determination that extraordinary circumstances existed is amply supported by a sound and substantial basis in the record. In a thorough decision, the court carefully considered the evidence adduced at the two-day fact-finding hearing and concluded that the father was unfit to raise the children at that time. The court noted that the father admitted that he had regularly yelled and screamed at the mother, often calling her vile names, and that he had violated orders of protection on numerous occasions. The court further found that the father had engaged in at least one incident of physical violence against the mother by choking her. Many of these acts of domestic violence occurred in the presence of the children, including an incident where the father accosted an 18-year-old babysitter and her boyfriend, directed racial epithets at the boyfriend and used physical force to remove the children. The court noted that the father treated the grandmother and the great-grandmother, who provided the care for his children, with similar disdain, and that he had not sought a mental health evaluation, as mandated by the consent order. The father acknowledged that when he relocated to Virginia, he did not visit the children to say goodbye or tell them that he was moving, and that seven months elapsed before he made any attempt to contact them. The paternal grandfather, with whom the father resided in Virginia, testified that the father was unable to raise the children on his own. The court concluded that the evidence established that the father had no insight into the emotional harm that his behavior could cause to the children and that he evinced no concern for the disruption [*3]that they would experience if his request for permission to relocate them to Virginia was to be granted.
Family Court also properly considered the quality and duration of the grandmother's relationship with the children, finding that she had consistently played a significant role as a caregiver to them since birth. When the children resided with the great-grandmother, the grandmother lived approximately two blocks away and had daily contact with them. Although the father was sporadically present during that time, the court found that he was not actively engaged in caring for the children or establishing a relationship with them and that he provided only nominal financial support. The children thereafter lived with the grandmother for approximately one year. During that time, both parents were absent — the mother due to her heroin addiction and the father due to his relocation to Virginia — and the grandmother was the sole source of food, shelter and affection for the children.
We similarly conclude that Family Court's decision to award custody to the grandmother is amply supported by the record. In conducting a best interests analysis, "the pertinent factors to be considered are maintaining stability in the child's life, the quality of the respective home environments, the length of time the present custody arrangement has been in place and each party's past performance, relative fitness and ability to provide for and guide the child's intellectual and emotional development" (Matter of Heather U. v Janice V., 152 AD3d 836, 839 [2017] [internal quotation marks and citations omitted]). The court's extensive factual findings were relevant to both its extraordinary circumstances and best interests rulings (see Matter of Curless v McLarney, 125 AD3d 1193, 1195 [2015]). In conducting its best interests analysis, the court noted that it had determined that the father was not a fit parent and that he was unable, at that time, to provide for the needs of the children. The court found that the grandmother, by contrast, had consistently maintained a positive and significant role in the lives of the children since birth and was able to continue to provide for their needs, thereby concluding that an award of custody to the grandmother was in the children's best interests. Finally, we find no reason to alter the terms of Family Court's visitation order at this time.
McCarthy, J.P., Lynch, Devine and Clark, JJ., concur.
ORDERED that the order is affirmed, without costs.