■ In the Matter of JAMES NN., Appellant, v CORTLAND COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent. [934 NYS2d 555]—

Egan Jr., J.

Petitioner (hereinafter the father) is the biological father of Sierra C. (born in June 2007),[1] and respondent is the local social services agency into whose care and custody the child has been entrusted. The child was born while the father was in prison serving a sentence upon his conviction of attempted robbery in the third degree, and she spent the first three months of her life in a neonatal intensive care unit suffering from severe drug withdrawal. Following the child's discharge from the hospital, she was returned to her mother's care. Shortly thereafter, in October 2007, the mother tested positive for drug use, and the child was placed in foster care where she has remained—except for a brief period of time when she resided with her maternal grandmother.

The father was released from prison in June 2008 and, beginning in August or September of that year, participated in limited supervised visitations with the child. In January 2009, however, the father returned to prison on a parole violation after he, among other things, tested positive for cocaine. Following his release in May 2009, the father again was afforded limited supervised visitation with the child. In the interim, respondent commenced a permanent neglect proceeding seeking to terminate the mother's parental rights based upon, among other things, her chronic drug use. Although the father was not named as a party to that proceeding, he nonetheless appeared and was represented by counsel. Family Court terminated the mother's parental rights in October 2009 and, upon appeal, we affirmed (*Matter of Sierra C. [Deborah D.]*, 74 AD3d 1445 [2010]).

The father thereafter commenced this Family Ct Act article 6 proceeding seeking custody of the child. Following a hearing, Family Court dismissed the father's application, finding that extraordinary circumstances warranted divesting the father of custody. This appeal by the father ensued.

We affirm. "[A] biological parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (*Matter of Gray v Chambers*, 222 AD2d 753, 753 [1995], *lv denied* 87 NY2d 811 [1996]; *accord Matter of Ferguson v Skelly*, 80 AD3d 903, 904 [2011], *lv denied* 16 NY3d 710 [2011]; *Matter of Ramos v Ramos*, 75 AD3d 1008, 1009 [2010]). Factors to be considered in ascertaining whether extraordinary circumstances may be said to exist include "the length of time the child has lived with the nonparent, the qual-

---

1. Paternity was established at the behest of respondent and upon the father's default.

ity of that relationship and the length of time the biological parent allowed such custody to continue without trying to assume the primary parental role" (*Matter of Bevins v Witherbee*, 20 AD3d 718, 719 [2005]; *accord Matter of Tennant v Philpot*, 77 AD3d 1086, 1087 [2010]; *see Matter of Bohigian v Johnson*, 48 AD3d 904, 905 [2008]). To that end, although a court cannot divest a biological parent of custody simply because it believes that someone else could do a better job (*see Matter of Stark v Kinnaw*, 212 AD2d 943, 944 [1995]), the biological parent may be supplanted where he or she engages in "gross misconduct or other behavior evincing an utter indifference and irresponsibility" relative to the parental role (*Matter of Gray v Chambers*, 222 AD2d at 754) or where "grievous cause or necessity" warrants intervention (*Matter of Jodoin v Billings*, 44 AD3d 1244, 1245 [2007] [internal quotation marks and citation omitted]).

Initially, we have no quarrel with Family Court's finding that the father's credibility was completely undermined by what the court aptly characterized as his inconsistent and often incredible testimony,[2] as well as his stated willingness to "play the system" in order to get what he needed. As to the finding of extraordinary circumstances, although it appears that the father regularly exercised his limited visitation rights, he nonetheless was absent from his daughter for approximately 18 of the first 24 months of her life—prolonged separation occasioned by his entirely voluntary decision to commit a crime and thereafter violate the terms of his parole. More to the point, the record makes clear that the father made no effort—prior to the termination of the mother's parental rights—to seek custody or, while he was incarcerated, to offer any member of his extended family as a potential custodial resource for the child. Inasmuch as the father effectively abdicated (and made no effort to resume) his parental responsibilities and essentially acquiesced to the child's placement with respondent, we cannot say that Family Court erred with respect to its finding of extraordinary circumstances in this regard (*cf. Matter of Bohigian v Johnson*, 48 AD3d at 905; *Matter of Bevins v Witherbee*, 20 AD3d at 719-720).

The record also contains ample support for Family Court's alternative finding of extraordinary circumstances—namely, that the father is unfit to parent his child. The father, by his own admission, has a history of polysubstance abuse dating

---

**2.** For example, the father refused to acknowledge that the child had been born suffering from severe drug withdrawal, believing instead that the child's doctors had mismanaged her care and manufactured the addiction scenario to "cover their butts."

back some 25 years—a history marked by recurring relapses and a demonstrated inability to separate himself from people or situations that are a threat to his sobriety. Additionally, the father conceded that he twice attempted suicide and that, until recently, his mental health issues had gone largely unaddressed. Further, it is apparent from the father's testimony that he accepts little responsibility for his conduct, preferring instead to blame his lot in life on the ex-wives who manipulated him, the law enforcement or parole officials who lied about him and the system that failed him. Arguably most disturbing, however, is the father's unwillingness or inability to sever ties with the child's mother—despite his acknowledgment that theirs is a toxic relationship, that she is a threat to his continued sobriety and that she is to have no contact with the child.[3] In light of the foregoing, and giving due consideration to the father's prior criminal history, gang associations and untreated anger management issues, we find sufficient extraordinary circumstances to divest him of custody (*see Matter of Tennant v Philpot*, 77 AD3d at 1088-1089; *Matter of VanDee v Bean*, 66 AD3d 1253, 1255 [2009]; *Matter of Dellolio v Tracy*, 35 AD3d 737, 738 [2006]).

Finally, the record overwhelmingly supports Family Court's finding that the child's best interests would be served by remaining in respondent's custody. By all accounts, the child has thrived in the home of her foster parents—the only real home the child has ever known—and there is no question that the foster parents have the resources and skill set to meet the child's needs. In contrast, the father has no demonstrated track record in terms of housing, employment or parenting skills. Accordingly, we discern no basis upon which to disturb Family Court's sound and well-reasoned determination. The father's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Mercure, J.P., Malone Jr., Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.

3. Following a visit with the father in April 2010—six months after the mother's parental rights had been terminated and long after the father knew that neither he nor the child were to have any contact with her—the child revealed to her foster mother that she had spoken with her biological mother on the father's phone.