In the Matter of JEFFREY WAYNE GOLDEN, Respondent, v CHRISTINA M. GOLDEN et al., Respondents, and BRADLEY A. RICE, Appellant. (And Two Other Related Proceedings.) [938 NYS2d 207]—

Garry, J.

Absent a showing of " 'surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances,' " a parent has a claim of custody to his or her child that is superior to all others (*Matter of Ferguson v Skelly*, 80 AD3d 903, 904 [2011], *lv denied* 16 NY3d 710 [2011], quoting *Matter of Gray v Chambers*, 222 AD2d 753, 753 [1995], *lv denied* 87 NY2d 811 [1996]). Persistent neglect is demonstrated by a failure "to maintain substantial, repeated and continuous contact with a child or to plan for the child's future" (*Matter of Arlene Y. v Warren County Dept. of Social Servs.*, 76 AD3d 720, 721 [2010], *lv denied* 15 NY3d 713 [2010] [internal quotation marks and citations omitted]; *see* Social Services Law § 384-b [7] [a]; *Matter of Bisignano v Walz*, 164 AD2d 317, 319-320 [1990]). Additional factors to be considered in an extraordinary circumstances analysis include " 'the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the biological parent allowed such custody to continue without trying to assume the primary parental role' " (*Matter of Tennant v Philpot*, 77 AD3d 1086, 1087 [2010], quoting *Matter of Bevins v Witherbee*, 20 AD3d 718, 719 [2005]; *accord Matter of Ferguson v Skelly*, 80 AD3d at 905). The burden of establishing extraordinary circumstances rests with the nonparent seeking custody (*see Matter of Daphne OO. v Frederick QQ.*, 88 AD3d 1167, 1168 [2011]; *Matter of Turner v Maiden*, 70 AD3d 1214, 1215 [2010]). If this burden is met, custody is then determined based upon the best interests of the child (*see Matter of Tennant v Philpot*, 77 AD3d at 1087-1088; *Matter of Lori MM. v Amanda NN.*, 75 AD3d 774, 775 [2010]).

Here, we initially note that the mother stipulated to extraordinary circumstances at the fact-finding hearing based upon her inability to provide for the children and unaddressed mental health issues. As to the father, according deference to Family Court's factual findings and credibility determinations, we find a sound and substantial basis in the record supporting the existence of extraordinary circumstances (*see Matter of Ferguson v Skelly*, 80 AD3d at 905; *Matter of Magana v Santos*, 70 AD3d 1208, 1209 [2010]).

The father testified at the fact-finding hearing that he had not used illegal drugs for many years and did not abuse alcohol. The mother, however, testified that while they were together,

the father had grown a marihuana plant, smoked marihuana frequently—even in front of the older child—and often drank to the point of intoxication. A DSS caseworker who conducted an unannounced visit of the father's apartment in March 2010 testified that she found a 30-pack of beer in the father's refrigerator, a shelf displaying 10 to 15 empty whiskey bottles, and a glass marihuana pipe. She also observed numerous, unlocked pellet guns displayed on a shelf above the father's couch. Family Court was not satisfied by the father's explanations concerning these items "[b]ecause of his total lack of credibility." Although the father has been consistently employed, he has also frequently changed both jobs and apartments, posing issues as to the stability of his employment and living arrangements.

More troubling is the father's inconsistent involvement in the children's lives. The testimony revealed that when the older child was born, he rarely assisted with her care, preferring that someone else see to the child's needs. He initially questioned the paternity of the younger child, and has failed to provide any support, in the form of either supplies or money, to anyone caring for the children. The father did not visit with the children at all for several months following his separation from the mother, and only began to regularly see the children in May 2010, after filing for custody. Family Court then established a schedule of supervised visitation at the grandfather's home, but the father has remained inattentive to the children during these visits, and frequently ends them early. During his time with the children, he often uses his cell phone to call or text others. In addition, he has allowed the older child to engage in risky behavior, shows little interest in the younger child, and refuses to change diapers. Both the caseworker and the father's attorney recommended that the father attend classes to improve his parenting skills, but he has failed to do so. Considering all of the above, the evidence supports a finding of extraordinary circumstances (see Matter of Cumber v O'Leary, 56 AD3d 1067, 1070 [2008]; Matter of McDevitt v Stimpson, 1 AD3d 811, 813 [2003], lv denied 1 NY3d 509 [2004]).

Next, a sound and substantial basis in the record supports Family Court's best interests analysis and the award of custody to the grandfather (see Matter of Tennant v Philpot, 77 AD3d at 1089; Matter of Turner v Maiden, 70 AD3d at 1216-1217). The grandfather has worked as a farmhand and has maintained the same home for 28 years. His job allows him to come home several times per day to spend time with the children. His longtime, live-in girlfriend previously worked at a child-care center as

both a cook and a toddler teacher; she has also worked as a nanny. The children have an established schedule, and the older child's behavior has greatly improved while under the grandfather's care. Accordingly, we find no reason to disturb Family Court's determination (*see Matter of Cumber v O'Leary*, 56 AD3d at 1070-1071).

Peters, J.P., Rose, McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.