■ In the Matter of EDWARD A. CARPENTER JR., Appellant, v ROBERT P. PUGLESE et al., Respondents. (Proceeding No. 1.) In the Matter of ROBERT P. PUGLESE et al., Respondents, v EDWARD A. CARPENTER, Appellant, and BRANDY M. SHARP, Respondent. (Proceeding No. 2.) (And Another Related Proceeding.) [943 NYS2d 252]—

Egan Jr., J. Appeal from an order of the Family Court of Madison County (McDermott, J.), entered April 29, 2011, which, among other things, granted petitioners' application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the subject children.

Edward A. Carpenter Jr. (hereinafter the father) and Brandy M. Sharp (hereinafter the mother) are the unmarried biological parents of fraternal twin boys.[1] Approximately five weeks after the boys' birth in February 2008, a caseworker from the local social services agency made an unannounced visit to the parents' home and discovered that the boys were living in what she described as deplorable, unsanitary and unsafe conditions. Specifically, the parents' residence was littered with garbage, animal feces and the remnants of a cat's afterbirth, had several broken windows and lacked a working stove, toilet and heating system. At the time of the caseworker's visit, the boys were at the home of the mother's uncle, Robert P. Puglese, and his girlfriend, Melissa S. Switzer. Following discussions with the caseworker, Puglese and Switzer agreed to allow the mother and the boys to stay with them. Although the mother returned to live with the father shortly thereafter, the boys have remained with Puglese and Switzer to this day.

Following a series of petitions in Family Court, all of which were dismissed for various reasons, the father commenced the first of these proceedings in April 2010 seeking custody of the

---

1. The father also has four older children from four prior relationships; none of those children resides with him. By his own admission, one of those prior relationships—in addition to producing a child—resulted in his conviction of a felony sex offense and his subsequent classification as a risk level one sex offender. The mother also has an older child from another relationship—who does not reside with her—and, as of January 2011, was pregnant with her fourth child.

boys and naming the mother and Puglese as respondents. Puglese and Switzer then commenced a separate custody proceeding against the mother and the father in August 2010, which was followed by the mother's petition for custody in October 2010. Following a hearing, Family Court awarded custody of the boys to Puglese and Switzer with supervised visitation to the mother and the father. This appeal by the father ensued.[2]

We affirm. To be sure, "a biological parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (*Matter of Gray v Chambers*, 222 AD2d 753, 753 [1995], *lv denied* 87 NY2d 811 [1996]; *accord Matter of James NN. v Cortland County Dept. of Social Servs.*, 90 AD3d 1096, 1097 [2011]; *Matter of Tennant v Philpot*, 77 AD3d 1086, 1087 [2010]). In this regard, "[e]vidence that the parent has failed either to maintain substantial, repeated and continuous contact with a child or to plan for the child's future has been found to constitute persistent neglect sufficient to rise to the level of an extraordinary circumstance" (*Matter of Ferguson v Skelly*, 80 AD3d 903, 905 [2011], *lv denied* 16 NY3d 710 [2011]; *accord Matter of Wayman v Ramos*, 88 AD3d 1237, 1239 [2011], *lv dismissed* 18 NY3d 868 [2012]; *see Matter of Arlene Y. v Warren County Dept. of Social Servs.*, 76 AD3d 720, 721 [2010], *lv denied* 15 NY3d 713 [2010]). Upon reviewing the record, we are satisfied that Puglese and Switzer met their heavy burden (*see Matter of Golden v Golden*, 91 AD3d 1042, 1043 [2012]; *Matter of Melody J. v Clinton County Dept. of Social Servs.*, 72 AD3d 1359, 1360 [2010], *lv denied* 15 NY3d 703 [2010]) of demonstrating the requisite extraordinary circumstances here.

By his own admission, the father only saw the boys for brief periods of time (15 to 30 minutes each) on three occasions shortly after they went to live with Puglese and Switzer in April 2008 and subsequently did not see them again until August 2008. The father attempted to see the boys once in 2009 but, upon finding no one at home, "never went back . . . there for awhile." Indeed, the father did not see the boys at all during 2009 and, as of the time of the hearing, had seen them twice since being granted supervised visitation in December 2010.

In addition to his lack of contact with the boys, the record

---

2. Although the mother filed a brief on appeal seeking reversal of Family Court's order, she did not file a notice of appeal. Hence, we will confine our analysis to the merits of the father's appeal.

reflects that the father's sole plan for the boys' future was to get to know them better and then obtain custody "maybe a year, year and a half down the road." At the time of the hearing, the father was working seven hours a week as a seasonal farm hand and residing in his girlfriend's home. Additionally, the father did not own a car, possessed only a restricted driver's license—apparently as the result of his failure to pay child support for one or more of his remaining children—and, with the exception of his last two visits with the boys, never provided them with gifts or otherwise contributed to their support. Thus, notwithstanding the father's attempt to gain custody of the boys in 2008, there is ample evidence to support Family Court's finding that he persistently neglected the boys (*see e.g. Matter of Golden v Golden*, 91 AD3d at 1044; *Matter of McDevitt v Stimpson*, 1 AD3d 811, 812-813 [2003], *lv denied* 1 NY3d 509 [2004]).

We reach a similar conclusion as to Family Court's finding that the father was an unfit parent. In addition to the foregoing, the father's decision to permit his newborn twins to reside in a residence with several broken windows, "snow coming in underneath the front door and so forth" and no working stove, toilet or heating system, coupled with the parents' history of domestic violence,[3] evidences a lack of judgment sufficient to rise to the level of parental unfitness.

Finally, upon considering the totality of the circumstances (*see Matter of Tennant v Philpot*, 77 AD3d at 1089), including the parents' respective housing and employment situations, we are persuaded that it is in the boys' best interests to award custody to Puglese and Switzer, who have been caring for them since shortly after their birth. The father's remaining contentions, including his assertion that Family Court abused its sound discretion in awarding him only supervised visitation, have been examined and found to be lacking in merit.

Mercure, J.P., Spain, Stein and Garry, JJ., concur. Ordered that the order is affirmed, without costs.

---

**3.** The mother admitted that she was bipolar, and the father testified that she was prone to fits of violence. On one occasion, the mother purportedly came at the father with a butcher knife, prompting him to "literally punch[ ] her in the head and knock[ ] her out" in order to protect himself.