In the Matter of BRYANNE M. BURTON, Respondent, v MATTHEW S. BARRETT, Deceased, Respondent, and SUSAN LOCKE, Appellant. (Proceeding No. 1.) In the Matter of SUSAN LOCKE, Appellant, v BRYANNE M. BURTON, Respondent. (Proceeding No. 2.) [961 NYS2d 610]—

Peters, P.J. Appeal from an order of the Family Court of Broome County (Pines, J.), entered November 29, 2011, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, to modify a prior order of custody.

Bryanne M. Burton is the mother of a child born in 2006. Pursuant to a 2009 order, she and the child's father, Matthew S. Barrett, were awarded joint legal custody with the child's primary residence to be with the father. The mother was granted access consisting of three weekends per month along with weekly three-hour visits. The child resided with her father at

the home of Susan Locke, her paternal grandmother, until October 2010, when the father committed suicide. Shortly thereafter, the mother and grandmother each petitioned for custody of the child, and Family Court temporarily continued her primary physical residence with the grandmother. Following a factfinding hearing, Family Court determined that the grandmother had not demonstrated the existence of extraordinary circumstances, granted the mother sole custody of the child and awarded the grandmother visitation once per month from Friday after school until Saturday at 8:00 p.m. The grandmother appeals.

It is well settled that "a biological parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (*Matter of Carpenter v Puglese*, 94 AD3d 1367, 1368 [2012] [internal quotation marks and citation omitted]; *see Matter of Bennett v Jeffreys*, 40 NY2d 543, 549 [1976]; *Matter of Aylward v Bailey*, 91 AD3d 1135, 1135-1136 [2012]). Factors to be considered in ascertaining whether extraordinary circumstances exist include "the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the biological parent allowed such custody to continue without trying to assume the primary parental role" (*Matter of Bevins v Witherbee*, 20 AD3d 718, 719 [2005]; *accord Matter of Golden v Golden*, 91 AD3d 1042, 1043 [2012]; *Matter of James NN. v Cortland County Dept. of Social Servs.*, 90 AD3d 1096, 1097-1098 [2011]). Mindful that courts are "powerless to supplant parents except for grievous cause or necessity" (*Matter of Bennett v Jeffreys*, 40 NY2d at 546), the circumstances must be such that they "drastically affect the welfare of the child" (*id.* at 549; *accord Matter of Ramos v Ramos*, 75 AD3d 1008, 1010 [2010]; *see Matter of James NN. v Cortland County Dept. of Social Servs.*, 90 AD3d at 1098). The burden of proof rests with the nonparent seeking custody (*see Matter of Golden v Golden*, 91 AD3d at 1043).

Here, according the appropriate deference to Family Court's factual findings and credibility determinations (*see Matter of Melody J. v Clinton County Dept. of Social Servs.*, 72 AD3d 1359, 1360 [2010], *lv denied* 15 NY3d 703 [2010]; *Matter of Magana v Santos*, 70 AD3d 1208, 1209 [2010]), we find a sound and substantial basis for its determination that extraordinary circumstances were not shown to warrant depriving the mother of custody. Although the child resided with her father at the grandmother's home following the 2009 joint custody order, it

was the father who served as the child's primary custodian, with the grandmother aiding in caring for the child when the father was unable to do so. Throughout that time, the mother regularly and consistently exercised her visitation with the child and, upon learning of the father's death, she immediately filed for sole custody. While the evidence established that the mother has had a number of residences, lived at times with unsuitable companions and admittedly used alcohol and drugs in the past, she has not been the subject of any abuse or neglect proceeding and, although her youth and lack of maturity led to lapses in parental judgment, it is equally clear that she has since matured and taken positive steps to address and resolve those shortcomings (*see Matter of Ramos v Ramos*, 75 AD3d at 1011-1012; *Matter of Cortright v Workman*, 304 AD2d 862, 863 [2003]; *Matter of Gray v Chambers*, 222 AD2d 753, 754 [1995], *lv denied* 87 NY2d 811 [1996]; *Matter of Culver v Culver*, 190 AD2d 960, 961 [1993]). With the grandmother having failed to prove extraordinary circumstances, a best interests assessment was not warranted (*see Matter of Bennett v Jeffreys*, 40 NY2d at 548; *Matter of Ferguson v Skelly*, 80 AD3d 903, 906 [2011], *lv denied* 16 NY3d 710 [2011]; *Matter of Campbell v Brewster*, 9 AD3d 620, 622 [2004]). Thus, custody was properly awarded to the mother.

We do, however, agree with the grandmother's contention that Family Court should have awarded her more frequent visitation. There being no dispute that she has standing to seek visitation (*see* Domestic Relations Law § 72 [1]; *Matter of Varney v McKee*, 44 AD3d 1178, 1179 [2007]), the issue distills to whether Family Court properly exercised its discretion in determining a visitation schedule that would be in the best interests of the child (*see Matter of Terwilliger v Jubie*, 84 AD3d 1520, 1521 [2011]; *Matter of Johnson v Zides*, 57 AD3d 1318, 1319 [2008]). Here, while Family Court acknowledged that the child had a longstanding relationship with the grandmother and stated in its decision that it would award "regular visitation," it provided the grandmother with merely one 28-hour overnight period of visitation per month. Moreover, in so doing, the court failed to set forth the ultimate facts it considered in reaching its determination that it was in the best interests of the child to provide such limited contact between the child and the paternal grandmother. This need not detain us, however, as our authority in custody matters is as broad as that of Family Court and the record is sufficiently complete to allow us to perform a comprehensive best interests analysis (*see Matter of Valenti v Valenti*, 57 AD3d 1131, 1132 [2008], *lv denied* 12 NY3d 703 [2009]; *Matter of Cree v Terrance*, 55 AD3d 964, 966 [2008], *lv denied* 11 NY3d 714 [2008]; *Matter of Valentine v Valentine*, 3 AD3d 646, 647 [2004]).

Although there is no set formula for determining a child's best interests, "[f]oremost in the inquiry is the nature and extent of the existing relationship between the grandparent and child" (*Matter of Stellone v Kelly*, 45 AD3d 1202, 1204 [2007]; *see Matter of Ziarno v Ziarno*, 285 AD2d 793, 794 [2001], *lv denied* 97 NY2d 605 [2001]). Other factors to be considered include the "basis and reasonableness of the parent's objections, the grandparent's nurturing skills and attitude toward the parent, the . . . assessment [of the attorney for the child] and the child's wishes" (*Matter of Stellone v Kelly*, 45 AD3d at 1205).

As is crystal clear from the record, the grandmother has been a continuing presence in this child's young life. She has seen the child on at least a weekly basis from the time of the child's birth in 2006 until physical custody was awarded to the father in 2009. During the following $2^{1}/_{2}$ years when the child resided with her, she provided care when the father was unable to, brought the child to school everyday and attended the majority of her school and extracurricular activities. The record also reveals that the child has had regular contact and formed strong bonds with her paternal cousins, several of whom are similar in age. While we certainly do not condone the grandmother's conduct in failing to inform the mother of the father's death and enrolling the child in counseling without consulting the mother, the fact remains that she has had a history of extensive contact with the child and has developed a strong and loving bond with her. Notably, the mother stated during the hearing that she was not opposed to the court awarding the grandmother visitation with the child and, in fact, recognized that visitation was in the child's best interests. Moreover, the attorney for the child, citing the grandmother's longstanding presence in the child's life and the bond between them, advocates for a visitation schedule that would provide for more frequent contact.

Upon our independent review of the record and considering the totality of the circumstances, we find that more regular contact with the grandmother will serve the child's best interests. Therefore, commencing 30 days from the date of this Court's decision, the grandmother's visitation schedule will be as follows: the second weekend of every month from Friday at the close of school, or from 3:00 p.m. if school is not in session, until Sunday at 6:00 p.m.; the fourth weekend of every month from 10:00 a.m. to 6:00 p.m. on Sunday; and at such other times as the parties may mutually agree. The grandmother shall be responsible for providing transportation to and from such visits.

Spain, Garry and Egan Jr., JJ., concur. Ordered that the order

is modified, on the law and facts, without costs, by reversing so much thereof as awarded Susan Locke visitation once per month from Friday after school until Saturday at 8:00 p.m.; award Susan Locke visitation as set forth in this Court's decision; and, as so modified, affirmed.