■ In the Matter of MARCUS CC., Appellant, v ERICA BB., Respondent. (Proceeding No. 1.) In the Matter of MARIA DD., Respondent, v MARCUS CC., Appellant, et al., Respondent. (Proceeding No. 2.) [967 NYS2d 503]—

Stein, J. Appeal from an order of the Family Court of Sullivan County (Meddaugh, J.), entered February 16, 2012, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the subject child.

Marcus CC. (hereinafter the father) and respondent Erica BB. (hereinafter the mother) are the parents of a son, born in 1997. In 1999, the parents agreed to an order awarding sole custody to the mother and visitation to the father. The mother and child moved to North Carolina for a year, but returned to Sullivan County in 2000 and resided with the father until 2001. The mother and child then lived with petitioner Maria DD., the child's maternal grandmother, and, although the mother left the grandmother's apartment and established her own apartment nearby, the child continued to live with the grandmother. In 2011, shortly after the mother was indicted for aggravated driving while ability impaired by drugs, the father and grandmother each filed custody petitions. The mother, who was incarcerated at the time, pleaded guilty to the charge against her and was determined to have neglected her children, including the son. Family Court then held a hearing on the custody petitions, found that the grandmother established extraordinary circumstances, and awarded her sole custody. The father now appeals.

We affirm. "It is fundamental that a biological parent has a claim of custody of his or her child, superior to that of all others, in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances" (*Matter of Burghdurf v Rogers*, 233 AD2d 713, 714 [1996], *lv denied* 89 NY2d 810 [1997] [internal quotation marks and citations omitted]; *see Matter of Michael B.*, 80 NY2d 299, 309 [1992]; *Matter of Male Infant L.*, 61 NY2d 420, 426-427 [1984]; *Matter of Dickson v Lascaris*, 53 NY2d 204, 208 [1981]; *Matter of Bennett v Jeffreys*, 40 NY2d 543, 549 [1976]). The relevant factors to be considered in determining whether extraordinary circumstances exist include " 'the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the biological parent allowed such custody to continue without trying to assume the primary parental role' " (*Matter of Burton v Barrett*, 104 AD3d 1084, 1085 [2013], quoting *Matter of Bevins v Witherbee*, 20 AD3d 718, 719 [2005]; *see Matter of Carpenter v Puglese*, 94 AD3d 1367, 1368 [2012]). It is the

nonparent's burden to establish extraordinary circumstances (*see Matter of Golden v Golden*, 91 AD3d 1042, 1043 [2012]) and, when that burden is met, custody is determined based upon the child's best interests (*see Matter of Daphne OO. v Frederick QQ.*, 88 AD3d 1167, 1168 [2011]; *Matter of Tennant v Philpot*, 77 AD3d 1086, 1087-1088 [2010]).

Here, at the time of the hearing, the child was 14 years old and had resided with the grandmother since he was four or five years old. Their strong relationship was amply developed and established in the record. The father testified that he knew for years that the mother was incapable of caring for the child and that the child had been living with the grandmother. In fact, he acknowledged that he could have sought custody of the child five years earlier, but did not do so until he received notice that the mother had been arrested, which resulted in a neglect petition being brought against the mother in May 2011. In our view, this acknowledgment is significant in that it demonstrates that the father knowingly allowed the child to reside with the grandmother without attempting to assume the primary parental role under circumstances in which it would have been reasonable to do so.

Notwithstanding that the mother resided near the grandmother and that the child saw the mother regularly, the uncontroverted evidence established that the grandmother has, together with some assistance from the mother, met the majority of the child's day-to-day needs and has been primarily responsible for his care for the greater part of the child's life (*compare Matter of Burton v Barrett*, 104 AD3d at 1085-1086).[1] Under these circumstances, we disagree with the dissent's conclusions that the mother was actually exercising her legal rights to custody or that it is dispositive that the disruption in the father's custody occurred during a time in which the mother had such legal rights. Moreover, the child has not resided with the father in over a decade. Although the father has maintained contact with the child—in person and by telephone—while the child has been in the grandmother's care, Family Court discredited the father's testimony regarding the frequency of his visitation and concluded that such visitation was sporadic, with limited overnight stays. In addition, the father was unable to

---

1. The cases relied upon by the dissent for concluding that extraordinary circumstances were not demonstrated here are distinguishable on their facts because, in those cases, the length of time that the parent's custody had been disrupted was substantially less than the duration of such disruption in the instant matter (*see Matter of Ferguson v Skelly*, 80 AD3d 903, 905 [2011], *lv denied* 16 NY3d 710 [2011]; *Matter of Ramos v Ramos*, 75 AD3d 1008, 1009 [2010]).

remember the names of any of the child's teachers or doctors and testified to minimal involvement in the child's education and medical treatment.[2]

While, perhaps, not directly relevant to the grandmother's burden of demonstrating extraordinary circumstances, the father's conduct throughout these proceedings was consistent with his pre-petition failure to assume the primary parenting role. For example, Family Court noted that, despite having been awarded temporary custody of the child during the pendency of the custody proceedings, the father did not assume custody of the child, and the child remained in the grandmother's care. When asked why he did not assume custody of the child, the father first claimed that he never received the temporary order in the mail, yet he was present when the court pronounced the terms of such order and he relied upon the temporary order to seek termination of his child support obligation and to apply for certain government benefits for the child. The father then gave contradictory testimony in which he conceded that he did receive the temporary order, but explained that he did not take custody of the child because he "was upset" that he had only "gotten temporary custody."

Considering the situation as a whole and according due deference to Family Court's factual findings and credibility assessments (see Matter of Rodriguez v Delacruz-Swan, 100 AD3d 1286, 1289 [2012]; Matter of Magana v Santos, 70 AD3d 1208, 1209 [2010]), we discern a sound and substantial basis in the record for that court's determination that the grandmother established the existence of extraordinary circumstances (see Matter of James NN. v Cortland County Dept. of Social Servs., 90 AD3d 1096, 1098 [2011]; Matter of Magana v Santos, 70 AD3d at 1209; see also Matter of Bishunath v Bishunath, 90 AD3d 654, 654 [2011]; compare Matter of Aylward v Bailey, 91 AD3d 1135, 1136 [2012]).

Moreover, Family Court's finding that an award of custody to the grandmother was in the child's best interests has ample support in the record. Most notably, the grandmother has been the child's main source of stability for a majority of his life and has been able to meet his physical, emotional and educational

2. We disagree with the dissent's conclusion that the grandmother was unfamiliar with the child's medical condition and treatment. The record reflects that the grandmother knew the name of the child's physician and that she had been to the doctor's office with the child. Although she was initially unable to accurately name the child's diagnosis—she referred to the diagnosis as "ADD"—and may have received some prompting by the mother, she ultimately confirmed the diagnosis as ADHD, and explained that the child was "hyper."

needs. The grandmother has been supportive of the child's relationship with his father and the award of custody to the grandmother is consistent with the position advocated by the attorney for the child. In contrast, the child has had only a few overnight visits with the father. The father's involvement with the child has been inconsistent and he is unfamiliar with the basic details of the child's life, which, in our review, represents a substantial abdication of his parental responsibilities (*see Matter of James NN. v Cortland County Dept. of Social Servs.*, 90 AD3d at 1098). Therefore, based upon the totality of the circumstances (*see Matter of Carpenter v Puglese*, 94 AD3d at 1369), we discern no basis for disturbing Family Court's determination that an award of custody to the grandmother is in the best interests of the child (*see Matter of Rodriguez v Delacruz-Swan*, 100 AD3d at 1289; *Matter of Golden v Golden*, 91 AD3d at 1043; *Matter of Magana v Santos*, 70 AD3d at 1209).

Peters, P.J., and Spain, J., concur.

Rose, J. (dissenting). We respectfully dissent. The sole issue raised by Marcus CC. (hereinafter the father) is whether petitioner Maria DD. (hereinafter the grandmother) established extraordinary circumstances so as to overcome his superior right of custody. In our view, bearing in mind that " '[a] finding of extraordinary circumstances is rare, and the circumstances must be such that they "drastically affect the welfare of the chil3d" ' " (*Matter of Ramos v Ramos*, 75 AD3d 1008, 1010 [2010], quoting *Matter of Jenny L.S. v Nicole M.*, 39 AD3d 1215, 1215 [2007], *lv denied* 9 NY3d 801 [2007] [internal quotation marks and citation omitted]), the grandmother failed to sustain her "heavy burden" (*Matter of Ferguson v Skelly*, 80 AD3d 903, 905 [2011], *lv denied* 16 NY3d 710 [2011]; *see Matter of Aylward v Bailey*, 91 AD3d 1135, 1136 [2012]).

The grandmother's direct case consisted solely of her own, brief testimony, which at times was coached by respondent Erica BB. (hereinafter the mother).* The grandmother was unable to clearly testify how long the child had lived with her and was unable to identify the child's medical diagnosis. Moreover, the grandmother acknowledged that the mother lived in the same apartment complex, saw the child every day and was responsible for taking the child to the doctor and ensuring that he had his prescription medication. Indeed, while the majority describes the mother as providing some assistance while the child resided with the grandmother, the record reveals that the child freely spent nights with the mother, and the grandmother conceded

---

* Family Court warned the mother that the coaching needed to stop or she would have to leave.

that she was working together with the mother to obtain custody.

Moreover, while the grandmother testified that the father only saw the child one or two times per year, Family Court credited him with more frequent, monthly visits and it is undisputed that the father maintained regular telephone contact with the child. Although the majority faults the father's lack of involvement in the child's life, he did testify that he went to the child's school during the proceedings and, in any event, his lack of knowledge as to the child's medical and educational needs cannot be considered persistent neglect in light of the uncontroverted fact that he maintained contact with the child (see Matter of Gray v Chambers, 222 AD2d 753, 754 [1995], lv denied 87 NY2d 811 [1996]). Also, the father's remark that he could have sought custody of the child earlier is insufficient to satisfy the grandmother's heavy burden of establishing the existence of extraordinary circumstances. Nor does the father's failure to exercise custody after the issuance of the temporary order have any bearing on whether the grandmother satisfied her burden. Notwithstanding the father's subsequent explanations, the record reveals that when that order was issued, Family Court expressly suggested that the father work with the grandmother so that the child could continue to live with her.

In sum, there is no viable claim here that the father surrendered, abandoned or persistently neglected the child, nor was there any evidence that he was an unfit parent. Although there was a disruption of his custody, it occurred during a time when the mother was exercising sole custody and, therefore, cannot be considered extraordinary circumstances so as to overcome his superior right of custody (see Matter of Ferguson v Skelly, 80 AD3d at 905; Matter of Ramos v Ramos, 75 AD3d at 1009-1010; Matter of Stiles v Orshal, 290 AD2d 824, 825 [2002]). In the absence of such circumstances, the grandmother's petition should have been dismissed.

Egan Jr., J., concurs. Ordered that the order is affirmed, without costs.