Matter of Dellapiana v Dellapiana (2018 NY Slip Op 03182)





Matter of Dellapiana v Dellapiana


2018 NY Slip Op 03182


Decided on May 3, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 3, 2018

523408

[*1]In the Matter of DONNA M. DELLAPIANA, Respondent,
v
ALYSON N. DELLAPIANA, Respondent, and DOMIYON J. TAYLOR SR., Appellant.

Calendar Date: March 29, 2018

Before: Garry, P.J., Egan Jr., Devine, Aarons and Rumsey, JJ.


Noreen McCarthy, Keene Valley, for appellant.
Pro Bono Appeals Program, Albany (Thomas S. D'Antonio of counsel), for Donna M. DellaPiana, respondent.
Adam H. Van Buskirk, Chateaugay, for Alyson N. DellaPiana, respondent.
Cheryl Maxwell, Plattsburgh, attorney for the child.


Aarons, J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered June 23, 2016, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the subject child.
Respondent Alyson N. DellaPiana (hereinafter the mother) and respondent Domiyon J. Taylor Sr. (hereinafter the father) are the unmarried parents of a son (born in 2014)[FN1]. After the father and the mother were incarcerated in February 2015 and June 2015, respectively, the child began living with petitioner (hereinafter the grandmother), the maternal grandmother. In July 2015, the grandmother commenced this proceeding seeking sole legal and physical custody of the [*2]child; she was subsequently granted temporary custody of the child [FN2]. Following a trial, in June 2016, Family Court, among other things, awarded sole legal and physical custody of the child to the grandmother and set forth a period of supervised visitation for the mother and the father. The father now appeals.
As an initial matter, we reject the contention by the grandmother and the attorney for the child that the mother is not a proper party to this appeal and further note that the separate motions to strike her brief were denied (see 2017 NY Slip Op 91431[U] [2017]). Nevertheless, to the extent that the mother seeks affirmative relief beyond that sought by the father, such request is not properly before us in the absence of a notice of appeal by her from the June 2016 order (see Matter of Durgala v Batrony, 154 AD3d 1115, 1118 [2017]).
Turning to the merits, at trial, a caseworker from the Schenectady County Department of Children and Family Services testified that she met with the father and the mother in the hospital after the child had tested positive for opiates at birth. The father admitted to a caseworker that he regularly smoked marihuana and that he had mental health issues. Even though the father was advised to seek treatment for his drug and mental health issues and to submit to drug tests, he failed to do so.
The record further indicates that the father moved from place to place, living at the houses of either family members or friends. At one point, the child was living with his great-grandmother while the father and the mother resided elsewhere. To that end, another caseworker from the Schenectady County Department of Children and Family Services testified that when she asked the great-grandmother where the mother and the father were, the great-grandmother responded that she did not know and that they had gone away for a few days. The father also testified that he was aware of a safety plan which required him to supervise the mother when the child was with her, but the grandmother testified that there were times that the mother was left alone with the child. The father was aware of outstanding arrest warrants for the mother and testified that he wanted her to move out of his family member's house so that the police would not find her.
As to his employment, the father testified that he performed side jobs for people. The father also admitted, however, that in September 2015, he wrote on the assigned counsel application that he did not have a job. The father did not have a driver's license but was nonetheless involved in an accident while driving a car with the child during a storm. The father provided false information to the police officer who arrived at the accident scene, which subsequently led to his arrest and incarceration in February 2015.
Additionally, the father never saw the child during his period of incarceration. After his release, the father still had not seen the child and failed to prosecute his petition to modify the temporary custody order. The grandmother testified that she offered the father a visit in December 2015, but he declined the offer. Also, even though the father requested visitation with the child during the trial, he subsequently withdrew such request. Moreover, the child has lived with the grandmother since he was seven months old. The grandmother stated that after the [*3]mother was incarcerated, she informed the father that she was going to bring the child to her house, to which the father did not object. The grandmother has taken care of the child's day-to-day needs without any financial contribution from the father.
The foregoing evidence demonstrates that the grandmother, as a nonparent seeking custody of a child over and against a parent's superior custody claim, satisfied her threshold burden of demonstrating the existence of extraordinary circumstances (see Matter of Suarez v Williams, 26 NY3d 440, 446 [2015]; Matter of Evelyn EE. v Ayesha FF., 143 AD3d 1120, 1124-1125 [2016], lv denied 28 NY3d 913 [2017]; Matter of Battisti v Battisti, 121 AD3d 1196, 1197-1198 [2014]; compare Matter of Donna SS. v Amy TT., 149 AD3d 1211, 1212 [2017]). Although Family Court did not make an explicit determination of extraordinary circumstances, it concluded that the father was unfit to care for the child, and its factual findings are supported by a sound and substantial basis in the record (see Matter of Marcia ZZ. v April A., 151 AD3d 1303, 1305 [2017]; Matter of Rodriguez v Delacruz-Swan, 100 AD3d 1286, 1288-1289 [2012]; Matter of Scala v Parker, 304 AD2d 858, 859-860 [2003]; Matter of Scott FF. v Laurene EE., 278 AD2d 539, 540 [2000])[FN3]. We note that the father offered testimony as to his employment prospects, living situation, interactions with his other children and efforts in reaching out to the grandmother to see the child. Family Court, however, found him to be "particularly dishonest with respect to several issues," and we accord great deference to the court's credibility determinations and factual findings (see Matter of Adam E. v Heather F., 151 AD3d 1212, 1213 [2017]; Matter of Turner v Maiden, 70 AD3d 1214, 1216 [2010]). Furthermore, the grandmother has taken care of the child for most of his life and provided him with stability, and the record reflects that the father has made minimal efforts to visit or regain custody of the child or to assume a parental role. As such, the record evidence supports a finding of extraordinary circumstances (see Matter of Christy T. v Diana T., 156 AD3d 1159, 1161 [2017]; Matter of Rumpff v Schorpp, 133 AD3d 1109, 1110-1111 [2015]; Matter of Golden v Golden, 91 AD3d 1042, 1044 [2012]; Matter of Turner v Maiden, 70 AD3d at 1217).
With the requisite extraordinary circumstances having been established, custody is determined based upon the best interests of the child (see Matter of Nevaeh MM. [Sheri MM.—Charles MM.], 158 AD3d 1001, 1003 [2018]; Matter of Aida B. v Alfredo C., 114 AD3d 1046, 1048 [2014]; Matter of Magana v Santos, 70 AD3d 1208, 1210 [2010]). Taking into account that the grandmother is better equipped to financially provide for the child and has provided the child with a stable living environment and that the child, since June 2015, has lived in her care with his half brother, with whom he as a great relationship, we perceive no basis to disturb Family Court's custody determination (see Matter of Mary D. v Ashley E., 158 AD3d 1022, 1025 [2018]; Matter of Rodriguez v Delacruz-Swan, 100 AD3d at 1289; Matter of Carpenter v Puglese, 94 AD3d 1367, 1369 [2012]). We also note that, although not determinative, Family Court's custody determination is consistent with the position of the attorney for the child (see Matter of Marcus CC. v Erica BB., 107 AD3d 1243, 1247 [2013], appeal dismissed 22 NY3d 911 [2013]). Finally, the father's challenge to the visitation terms in the June 2016 order is moot in view of the father's subsequent petition to amend such terms and the entry of a superseding consent order in October 2017 (see Matter of Cameron ZZ. v Ashton B., 148 AD3d 1234, 1234 [2017]).
Garry, P.J., Egan Jr., Devine and Rumsey, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father also had three other children, ranging in age from three years old to eight years old, from separate relationships.

Footnote 2: In August 2015, the father, after his release from prison, filed a petition to modify the temporary order granting the grandmother temporary custody of the child. This petition, however, was dismissed without prejudice due to the father's failure to appear in support of it. 

Footnote 3: The record was also nonetheless adequately developed for us to independently review the evidence and determine whether there were extraordinary circumstances (see Matter of Curless v McLarney, 125 AD3d 1193, 1195 [2015]).