Matter of Debra SS. v Brian TT. (2018 NY Slip Op 05240)





Matter of Debra SS. v Brian TT.


2018 NY Slip Op 05240


Decided on July 12, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 12, 2018

524980

[*1]In the Matter of DEBRA SS., Respondent,
v
BRIAN TT., Appellant, et al., Respondent. (Proceeding No. 1.)
In the Matter of DEBRA SS., Respondent,
v
BRIAN TT., Appellant. (Proceeding No. 2.)

Calendar Date: June 7, 2018

Before: Garry, P.J., McCarthy, Lynch, Devine and Mulvey, JJ.


Lisa A. Natoli, Norwich, for appellant.
Pamela B. Bleiwas, Ithaca, for respondent.
Martha A. Lyons, Binghamton, attorney for the child.



MEMORANDUM AND ORDER
Lynch, J.
Appeals (1) from an order of the Family Court of Broome County (Young, J.), entered April 11, 2017, which granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 8, for an order of protection, and (2) from an order of said court, entered May 9, 2017, which granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, for custody of the subject child.
Respondent Brian TT. (hereinafter the father) and respondent Nicole UU. (hereinafter the mother) are the unmarried parents of one child (born in 2008). Pursuant to a 2014 Family Court order, the father and the mother shared joint legal custody of the child, with primary physical custody to the father. At that time, the father and the child were living with petitioner, the child's paternal grandmother (hereinafter the grandmother), as well as her husband (hereinafter the stepgrandfather).
On June 30, 2016, the father and the grandmother engaged in a heated verbal exchange concerning the father having a female overnight guest, which escalated to a physical altercation between the father and the stepgrandfather. On July 6, 2016, the grandmother commenced two proceedings, one pursuant to Family Ct Act article 6, seeking joint legal custody and primary physical custody of the child, and the other pursuant to Family Ct Act article 8, alleging that the father had committed family offenses against her. Family Court issued a temporary order of protection in favor of the grandmother and a temporary order of custody granting joint legal custody of the child to the grandmother, the father and the mother, with primary physical custody to the grandmother. Following a fact-finding hearing, which was held over three days, and a Lincoln hearing with the child, Family Court found that extraordinary circumstances existed and then awarded joint legal custody of the child to the grandmother, the father and the mother, with primary physical custody to the grandmother and visitation to the father and the mother as agreed upon by the parties. Family Court also granted the grandmother's family offense petition and issued an order of protection in her favor, directing the father to refrain from, among other things, assaulting, harassing or committing any other criminal offense against her for one year. The father now appeals both orders.[FN1]
"A parent has a claim of custody to his or her child that is superior to all other persons, unless a nonparent establishes that there has been surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or 'other like extraordinary circumstances'" (Matter of Donna SS. v Amy TT., 149 AD3d 1211, 1212 [2017], quoting Matter of Bennett v Jeffreys, 40 NY2d 543, 544 [1976]; see Matter of Heather U. v Janice V., 152 AD3d 836, 837 [2017]). "The nonparent bears the burden of demonstrating the existence of such extraordinary circumstances, which may include proof that the parent has neglected to maintain substantial, repeated and continuous contact with the child[ ] or make plans for [his or her] future" (Matter of Sweeney v Sweeney, 127 AD3d 1259, 1260 [2015] [internal quotation marks and citations omitted]; see Matter of Carpenter v Puglese, 94 AD3d 1367, 1368 [2012]). "The extraordinary circumstances analysis must consider the cumulative effect of all issues present in a given case, including, among others, the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the parent allowed such custody to continue without trying to assume the primary parental role" (Matter of Marcia ZZ. v April A., 151 AD3d 1303, 1304 [2017] [internal quotation marks and citations omitted]; see Matter of Burton v Barrett, 104 AD3d 1084, 1085 [2013]).
In 2009, the mother dropped off the child at the grandmother's residence after deciding to move to Georgia. At that time, the father was living at the grandmother's house. Since then, [*2]the child has resided at the grandmother's house, attending the same school from pre-kindergarten to the third grade. The father has, for brief periods of time, leased apartments, but has otherwise lived in the grandmother's house with the child. When the child was with the father at his apartment, he would drive the child back to the grandmother's house in the evening so that she could go to school the following day. When asked what he would do if Family Court returned the child to him, the father replied that he did not intend to "rip[] her" out of the grandmother's house and stated that he would "wean her" off of living with the grandmother over a period of time.
The record reflects that the father, at best, has an unstable work history, failing to maintain consistent employment from 2009 to 2016. In 2014, the father began accepting sporadic contract work that required him to be out of town for approximately seven weeks at a time, during which time the child would stay with the grandmother. When asked what arrangements he would make for the child the next time that he left town for work, the father responded that he would not need to accept such an offer because he had been approved for unemployment insurance benefits. Furthermore, with respect to motor vehicle payments that he had been making to the grandmother and the stepgrandfather since 2013, the father indicated that it was his plan to pay the vehicle off entirely so that he could accept a lower paying job.
The record also reflects that, in 2002, the father was diagnosed with bipolar disorder and attention deficit hyperactivity disorder. By his own admission, the father does not take prescription medication to treat these mental health issues, opting instead to self-medicate daily with marihuana. Moreover, according to the father, his mental health issues play a role in his inability to maintain long-term employment. In addition, when asked to submit to a drug test, the father failed to do so, explaining that he could not afford to take one. Notably, pursuant to the 2014 Family Court order, the father was prohibited from using illegal drugs 12 hours prior to or during any custodial period, yet he admittedly continued to smoke marihuana, and, although he does not smoke marihuana in front of the child, the child is aware of his drug use. Furthermore, while the father, who was 39 years old at the time of the fact-finding hearing, stated that he intended to go back to school and applying for Medicaid in order to address his mental health issues, it does not appear that he did anything to carry out these intentions.
We agree with Family Court that the grandmother met her burden of establishing extraordinary circumstances. The child has resided in the grandmother's household since 2009 and the grandmother has assumed the role of primary caregiver since that time. The father has maintained a good and consistent relationship with the child, but has failed to provide a stable home for the child or himself or to otherwise viably plan for her future. His failure to properly address his mental health concerns, which he concedes has contributed to his lack of employment, raises great uncertainty as to having him assume primary custody. Giving due deference to Family Court's factual findings and credibility determinations (see Matter of Curless v McLarney, 125 AD3d 1193, 1197 [2015]; Matter of Arlene Y. v Warren County Dept. of Social Servs., 76 AD3d 720, 721-722 [2010], lv denied 15 NY3d 713 [2010]), we find that Family Court's finding of extraordinary circumstances is supported by a sound and substantial basis in the record (see Matter of Marcia ZZ. v April A., 151 AD3d at 1304; Matter of Sweeney v Sweeney, 127 AD3d at 1261; Matter of Ettari v Peart, 110 AD3d 1256, 1257 [2013]; compare Matter of Burton v Barrett, 104 AD3d at 1085-1086).
As for the best interests analysis, notwithstanding Family Court's failure to expressly address best interests, we may review the record and make our own independent determination [*3](see Scott Q. v Joy R., 151 AD3d 1206, 1207 [2017], lv denied 29 NY3d 919 [2017]). Following a finding of extraordinary circumstances, "[n]o continuing preference for the parent over the nonparent is part of the analysis; instead, factors to be taken into account include the parties' respective abilities to provide stable homes for the child[ ], their relationships with the child[ ] and ability to guide and provide for [him or her], the child[ ]'s wishes and [the parties'] willingness to foster a positive relationship between the child[ ] and the other party" (Matter of Rumpff v Schorpp, 133 AD3d 1109, 1111 [2015] [internal quotation marks and citation omitted]; see Matter of Cristy T. v Diana T., 156 AD3d 1159, 1161 [2017]).
It is clear that both the father and the grandmother have a good, loving relationship with the child. However, as indicated above, the father has not maintained a stable residence for either himself or the child or properly addressed his mental health issues, nor has he demonstrated that he is able to maintain employment. Since 2009, the child's primary residence has been at the grandmother's house, the child attends school from the grandmother's house and the grandmother has provided much needed stability in the child's life. Furthermore, the grandmother has demonstrated a strong willingness to foster a positive relationship between the child and both the mother and the father. In addition, although not determinative, we note that Family Court's custody determination is consistent with the position of the attorney for the child (see Matter of Marcus CC. v Erica BB., 107 AD3d 1243, 1247 [2013], appeal dismissed 22 NY3d 911 [2013]). In light of the foregoing, we conclude that Family Court's custody determination is supported by a sound and substantial basis in the record (see Matter of Durgala v Batrony, 154 AD3d 1115, 1118 [2017]; Matter of Heather U. v Janice V., 152 AD3d at 839-840).
Finally, we agree with Family Court that the grandmother satisfied her burden of proof on her family offense petition. As the party seeking an order of protection, the grandmother bore the burden of establishing by a preponderance of the evidence that the father committed one of certain enumerated offenses. The determination of "whether a family offense has been committed is a factual issue to be resolved by Family Court, and its determinations regarding the credibility of witnesses are entitled to great weight on appeal" (Matter of Shana SS. v Jeremy TT., 111 AD3d 1090, 1091 [2013] [internal quotation marks, brackets, ellipsis and citations omitted], lv denied 22 NY3d 862 [2014]; accord Matter of Evelyn EE. v Lorraine B., 152 AD3d 915, 918 [2017], lv denied 30 NY3d 903 [2017]). Although the grandmother did not indicate in her petition what particular family offense the father committed, and Family Court neglected to specify which of the family offenses it found the father to have committed, we may independently review the record to determine whether a fair preponderance of the evidence supports a finding that the father committed one of the qualifying family offenses (see Matter of Dawn DD. v James EE., 140 AD3d 1225, 1226 [2016], lv denied 28 NY3d 903 [2016]; Matter of Elizabeth X. v Irving Y., 132 AD3d 1100, 1101 [2015]; Jennifer JJ. v Scott KK., 117 AD3d 1158, 1159 [2014]). Harassment in the second degree occurs when a respondent, "with intent to harass, annoy or alarm another person, . . . strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same" (Penal Law § 240.26 [1]; see Matter of Dawn DD. v James EE., 140 AD3d at 1226). The requisite intent may be deduced from an examination of the respondent's conduct or the surrounding circumstances (see Matter of Lynn TT. v Joseph O., 129 AD3d 1129, 1130 [2015]; Matter of Christina KK. v Kathleen LL., 119 AD3d 1000, 1002 [2014]).
The grandmother testified that, on June 30, 2016, she and the stepgrandfather had a confrontation with the father concerning whether he could have overnight guests while living at [*4]the grandmother's house. According to the grandmother, after the stepgrandfather told him that he could not have overnight guests, the father became extremely agitated and began screaming obscenities at him. The grandmother further testified that, after the stepgrandfather left the room, the father stood up and came toward her in a threatening manner, causing her to push him away. The grandmother recounted that the father had been verbally and physically abusive to her in the past and she feared for her safety. According the requisite deference to Family Court's credibility determinations (see Matter of Evelyn EE. v Lorraine B., 152 AD3d at 918), we conclude that the grandmother's prior experience of being verbally and physically abused justified her fear that the father was going to subject her to physical contact so as to support a finding, by a fair preponderance of the evidence, that the father committed the family offense of harassment in the second degree (see Matter of Corey v Corey, 40 AD3d 1253, 1254-1255 [2007]).
Garry, P.J., McCarthy, Devine and Mulvey, JJ., concur.
ORDERED that the orders are affirmed, without costs.



Footnotes

Footnote 1:It is noted that the mother has not appealed from Family Court's custody order or filed a brief, but she indicated in her testimony that she believes that primary physical custody with the grandmother is in the child's best interests.